# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BI3, Inc., an Illinois Corporation, and Kenneth C. Tola, Jr., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **CASE NO. 08 CV 2384** |
| Alan B. Hamor, WK Networks, Inc., a Delaware Corporation, and CampaignLocal, Inc., a Delaware Corporation, | ) ) ) ) ) | **JUDGE DER-YEGHIAYAN** **MASGISTRATE JUDGE KEYS** |
| Defendants. | ) | |

## JOINT JURISDICTIONAL STATUS REPORT PURSUANT TO STANDING ORDER

Plaintiffs/Counter-Defendants, BI3, Inc., and Kenneth C. Tola, (hereafter "Plaintiffs," "BI3," and "Tola"), by counsel, Zaknoen & Zaknoen LLC and Defendants/Counter-Plaintiffs, Alan B. Hamor, WK Networks, Inc., and CampaignLocal, Inc., (hereafter "Defendants," "Hamor," "WK," and "CL"), by counsel, Meckler Bulger & Tilson, LLP, submit this Joint Jurisdictional Status Report pursuant to this Court's Standing Order.

## I.    SUBJECT MATTER JURISDICTION

This Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 based on diversity of citizenship.  This case involves Plaintiffs' request for payment for services provided to Defendants during the approximate time period of August 2006 - - August 2007.  In addition, Plaintiffs seek damages for attorney's fees and costs related to a suit brought against Plaintiffs in Virginia, from which Plaintiffs were dismissed in

February 2008.  Plaintiffs also seek to have the Court determine ownership of certain intellectual property known as "Data Trender," which was conceived in late February/ early March 2007 and embodied in a provisional patent application filed on April 17, 2007.

Throughout the entire time period related to Plaintiffs' claims, both Plaintiffs, were citizens and residents of the State of Illinois.  Plaintiff, Kenneth C. Tola, was a citizen and resident of the State of Illinois, residing at 220 West Scott Street in the City of Chicago from May 2006, through the date that this action was filed.  (*See* Affidavit of Kenneth C. Tola, Jr. ¶ 3, Exh. A, hereafter "Tola Aff., Exh. A at __").  Plaintiff, BI3, Inc., likewise was a citizen and resident of the State of Illinois during the entire time period referenced in the Complaint and remains an Illinois corporation.  (*See* Tola Aff., Exh. A at ¶ 2) BI3 was incorporated in the State of Illinois on May 31, 2006, and is currently a corporation in good standing in the State of Illinois; BI3's registered agent is Stuart O. Sorinsky, 425 Huehl Road, Bldg. 21, Northbrook, Illinois 60602.  (*See* Tola Aff., Exh. A at ¶ 2; BI3, Inc., Certificate of Good Standing, Exh. B.).  BI3's principal place of business during the time period at issue was 220 West Scott Street, Chicago, Illinois 60610.  (*See* Tola Aff., Exh. A at ¶ 2).

Defendant Alan B. Hamor is a citizen and resident of the State of New Jersey, residing at 22 Meadow Lane, Pennington, New Jersey.  (*See* Affidavit of Alan B. Hamor ¶ 2, Exh. C, hereafter "Hamor Aff., Exh. C at __").  Defendant, WK Networks, Inc., is a Delaware Corporation with its principal place of business located at 22 Meadow Lane, Pennington, New Jersey.  (See Hamor Aff., Exh. C at ¶ 3 & Exh. A to Hamor Aff.).  Defendant, CampaignLocal, Inc., is a Delaware corporation with its principal place of

business located in the State of New Jersey.  (See Hamor Aff., Exh. C at ¶ 4 & Exh. B to Hamor Aff.).

The amount in controversy exceeds $75,000.  BI3 contracted with WK Networks on or about September 29, 2006, to provide services at the rate of $3,000 per week.  (See Tola Aff., Exh. A at ¶ 4-5; Consulting Agreement, Appendix B:  Compensation, Exh. D.).  It is Plaintiffs' position that at the end of December 2006, there was approximately $33,000, owed for work performed under the Consulting Agreement.  (*See* Tola Aff., Exh. A at ¶ 5).  Plaintiff contends that on or about January 8, 2007, Tola, on behalf of BI3, and Hamor, on behalf of WK Networks, had discussions wherein WK Networks agreed to pay BI3 the sum of $250,000, for the services to be provided from January 8, 2007, through the rest of 2007.  (*See* Tola Aff., Exh. A at ¶ 6).  BI3 provided these services from January 2007 through August 2007 and to date has only received approximately $18,000.  Thus, it is Plaintiff's position that for the work performed pursuant to the Consulting Agreement and the January 8, 2007 agreement the amount owed is approximately $271,000.  (*See* Tola Aff., Exh. A at ¶ 7).  Defendants deny Plaintiffs' allegations regarding this alleged amount owed.

## II.    VENUE (PLAINTIFFS' POSITION)

Venue is proper in this district and this division pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to the claims for relief occurred in this district.  Tola, on behalf of BI3, provided services to Defendants during August 2006 – August 2007.  During this time period, Tola worked exclusively from BI3's principal place of business at 220 West Scott Street in the City of Chicago, Illinois.  (*See* Tola Aff., Exh. A at ¶ 3).  Plaintiffs and Defendants communicated extensively by telephone and e-

mail during this time period, with virtually all of these communications being directed to Plaintiffs at 220 West Scott Street in the City of Chicago, Illinois. (*See* Tola Aff., Exh. A at ¶ 3). Tola, on behalf of BI3, executed the Consulting Agreement at 220 West Scott Street and received the executed copy from Hamor at that location. (*See* Tola Aff., Exh. A at ¶ 4). BI3 received payments at 220 West Scott Street and deposited them into bank accounts in Chicago, Illinois. (*See* Tola Aff., Exh. A at ¶ 4). BI3 delivered completed work electronically from 220 West Scott Street in Chicago, Illinois. (*See* Tola Aff., Exh. A at ¶ 3).

Respectfully submitted,

/s/Joseph J. Zaknoen                          /s/Jason R. Schulze
Joseph J. Zaknoen                             Jason R. Schulze
Zaknoen & Zaknoen LLC                         Meckler Bulger & Tilson, LLP
Attorneys for Plaintiffs                      Attorneys for Defendants

Joseph J. Zaknoen (ARDC No. 6208253)          Scott M. Seaman (ARDC No. 6196630)
Edward G. Zaknoen (ARDC No. 6239683)          James G. Argionis (ARDC No. 6228773)
                                              Jason R. Schulze (ARDC No. 6238043)
Zaknoen & Zaknoen LLC                         Meckler Bulger & Tilson, LLP
161 N. Clark St., Suite 4700                  123 N. Wacker Drive, Suite 1800
Chicago, Illinois 60601                       Chicago, Illinois 60606
(312) 523-2191                                (312) 474-7900
(312) 523-2001 (fax)                          (312) 474-7898 (fax)

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| BI3, Inc., an Illinois Corporation, and ) | |
| Kenneth C. Tola, Jr., an Illinois Resident, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | **CASE NO. 08 CV 2384** |
| ) | |
| Alan B. Hamor, a New Jersey Resident, ) | **JUDGE DER-YEGHIAYAN** |
| WK Networks, Inc., a Delaware ) | |
| Corporation, and CampaignLocal, Inc., ) | **MASGISTRATE JUDGE KEYS** |
| a Delaware Corporation, ) | |
| ) | |
| Defendants. ) | |

### AFFIDAVIT OF KENNETH C. TOLA

Kenneth C. Tola, being first duly sworn upon his oath, deposes and says:

1.     I am one of the plaintiffs in the above-captioned matter. I have personal knowledge of the facts and matters stated herein and would testify to the same if called as a witness.

2.     I am the President and sole shareholder of BI3, Inc., "(BI3). BI3 was incorporated in the State of Illinois on or about May 31, 2006. From approximately May 2006-March 2008, BI3's principal place of business was 220 West Scott Street, Chicago, Illinois, 60610. The work BI3 performed for Defendants was performed from its principal place of business at 220 West Scott Street. BI3 is currently in good standing in the State of Illinois. In March 2008, BI3's principal place of business changed to 445 W. Wellington Avenue, #3E, Chicago, Illinois 60657. BI3's registered agent is Stuart O. Sorinsky, 425 Huehl Road, Bldg. 21, Northbrook, Illinois 60602.

1

Exhibit A

3.      I resided at 220 West Scott Street in the City of Chicago, Illinois 60610 from May 2006-May 2008. The work I did as the sole employee of BI3 for the Defendants was performed at 220 West Scott Street, Chicago, Illinois. I received numerous e-mails and telephone calls from Defendant Hamor at that location. I never worked "on-site" at any WK Networks or CampaignLocal location. Completed work was delivered electronically from 220 West Scott Street to servers located in Virginia or Delaware.

4.      I executed the Consulting Agreement referred to in the Complaint from 220 West Scott Street, Chicago, Illinois and received the executed copy back from Defendant Hamor at that location. BI3 received payments at its 220 West Scott Street location which were deposited into accounts in Chicago, Illinois.

5.      According to the terms of the Consulting Agreement, BI3 was to be compensated at the rate of $3,000 per week, as stated in the Consulting Agreement. Near the end of December 2006, I advised Defendant Hamor, that there was approximately $33,000, due and owing under the Consulting Agreement from Defendant WK Networks, Inc., to BI3, and that BI3 was going to cease work for WK Networks.

6.      On January 8, 2007, I e-mailed to Defendant Hamor a set of terms and conditions under which BI3 would be willing to continue work for WK Networks. A true and accurate copy of that e-mail is attached to this Affidavit. In a subsequent telephone conversation, Defendant Hamor agreed, on behalf of WK Networks, to pay BI3 the sum of $250,000, for the work BI3 would perform during the remainder of 2007.

2

7.      To date, BI3 has received only approximately $18,000, in payments from

WK Networks for the work performed.  The amount due to BI3 for the work performed is

in excess of $271,000.


I, Kenneth C. Tola, affirm under the penalties provided for perjury that the above
statements are true and correct to the best of my knowledge, information, and belief.

Kenneth C. Tola

STATE OF _California_ )
                      ) SS
COUNTY OF _Los Angeles_ )

Subscribed and sworn to before me/affirmed by me, a Notary Public, in
and for said County and State, by the above named person.

Notary Public

Dated: 6/14/08

My Commission Expires: 5/1/2010

MARTIN B. FOX
Commission # 1662687
Notary Public - California
Los Angeles County
My Comm. Expires May 1, 2010

3

| | |
|---|---|
| **From:** | Ken Tola |
| **To:** | "Alan Hamor"; |
| **Subject:** | Year End Invoice |
| **Date:** | Monday, January 08, 2007 11:44:00 PM |
| **Attachments:** | CampaignLocal 2006 Year End Invoice.pdf |

Alan –

Please call me when you have time to discuss further.

Ken

B

# Invoice for CampaignLocal:
# 2006 Year End Bill

## 1   Terms and Conditions

Per the terms and conditions of the agreement entered between WK Networks, Inc. and BI3, Inc. on October 2nd, 2006, BI3, Inc. was to be compensated according to the schedule detailed in Section 2 on a 30-day NET agreement.

The agreement put into effect between the two companies ensured that neither WK Network, Inc. nor BI3, Inc. would be able to use any knowledge or intellectual property in a business not mutually agreed to by both companies. This agreement did not restrict either company to remain within the confines of CampaignLocal, Inc – rather CampaignLocal was contractually viewed as a common ground for the purposes of developing this new technology.

As such, should both CampaignLocal and BI3, Inc. deem it appropriate, BI3 has full authority to develop and grow a separate entity based on the principles formed in CampaignLocal as long as this new entity is owned in a mutually agreed-upon way by both companies.

Finally, BI3 is not indebted to CampaignLocal to provide services for any defined period of time and BI3 may, given the severe lack of payments, terminate its services to CampaignLocal without notice.

## 2   Detailed Invoice

| Description | Amount | Date Billed | Outstanding Amount |
|---|---|---|---|
| Initial Bill | $25,125 | 9/25/2006 | $125 |
| 9/23 Weekly Bill | $3,000 | 9/29/2006 | $3,000 |
| 9/30 Weekly Bill | $3,000 | 9/29/2006 | $3,000 |
| 10/22 Weekly Bill | $3,000 | 10/28/2006 | $3,000 |
| 10/29 Weekly Bill | $3,000 | 10/28/2006 | $3,000 |
| 11/5 Weekly Bill | $3,000 | 11/17/2006 | $3,000 |
| 11/12 Weekly Bill | $3,000 | 11/17/2006 | $3,000 |
| 11/19 Weekly Bill | $3,000 | 11/17/2006 | $3,000 |
| 11/26 Weekly Bill | $3,000 | 12/3/2006 | $3,000 |
| 12/3 Weekly Bill | $3,000 | 12/3/2006 | $3,000 |
| 12/10 Weekly Bill | $3,000 | 1/8/2007 | $3,000 |
| 12/17 Weekly Bill | $3,000 | 1/8/2007 | $3,000 |
| 12/24 Weekly Bill | $3,000 | 1/8/2007 | $3,000 |
| 12/31 Weekly Bill | $3,000 | 1/8/2007 | $3,000 |
| Total: | $64.125 | | $39,125 |

B

## 3   Future Steps

At this point in time, the position of BI3, Inc. is that the potential of the business model represented by CampaignLocal, Inc. is sufficient to warrant continued efforts despite the lack of payments for services provided. These future services, however, need to be provided in a different context given recent trends. Therefore, BI3, Inc. suggests the following agreement:

1. 20% Ownership
   a. The sole owner of BI3, Inc., Ken Tola, would receive 20% ownership of CampaignLocal, Inc. both for efforts provided to this point and in light of his value to CampaignLocal, Inc. moving forward.
2. Not To Exceed Monthly Payment
   a. On a monthly basis, BI3, Inc. and the CEO of CampaignLocal, Inc. will analyze the current cash flow of CampaignLocal, Inc. and decide upon an agreed upon amount of compensation for each not to exceed a maximum amount that, if paid regularly, would fully compensate each at an agreed upon annual fee.
   b. It is suggested that the annual fee for BI3, Inc. be set at $250,000 which is commiserate with this company's recent contracts spanning over the past 5 years.
   c. In the cases wherein both parties agree to take less than the maximum amount, no special compensation shall be granted as those sums are suggested to be covered under the new ownership agreement.
   d. A minimum amount of compensation will be expected by the end of April and will be no less than 25% of the maximum monthly fee.
3. Scope
   a. This agreement only covers those sums from 1/1/2007 moving forward and they do not forgo past amounts due to BI3, Inc. for services previously rendered.
   b. The outstanding balance, described in Section 2, is due to BI3, Inc. – paid in full – by the end of March, 2007 according to the terms of this new agreement. Under this agreement, however, CampaignLocal, Inc. and BI3, Inc. may forgo negotiate a payment plan for this past amount as required.
4. Annual Bonuses
   a. This contract will also include an annual bonus based on the performance of CampaignLocal, Inc. and defined by the aforementioned ownership percentage.

This new contract needs to be agreed upon and signed by the end of January, 2007 in order to prevent a disruption in those services provided by BI3, Inc.

File Number          6492-582-2



## STATE OF ILLINOIS
### OFFICE OF
### THE SECRETARY OF STATE

# To all to whom these Presents Shall Come, Greeting:

*I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that*

BI3, INC., A DOMESTIC CORPORATION, INCORPORATED UNDER THE LAWS OF THIS STATE ON MAY 31, 2006, APPEARS TO HAVE COMPLIED WITH ALL THE PROVISIONS OF THE BUSINESS CORPORATION ACT OF THIS STATE RELATING TO THE PAYMENT OF FRANCHISE TAXES, AND AS OF THIS DATE, IS IN GOOD STANDING AS A DOMESTIC CORPORATION IN THE STATE OF ILLINOIS.



**In Testimony Whereof,** *I hereto set my hand and cause to be affixed the Great Seal of the State of Illinois, this* 18TH *day of* JUNE *A.D.* 2008 .

*Jesse White*

SECRETARY OF STATE

Authentication #: 0817001442

Authenticate at: http://www.cyberdriveillinois.com

Exhibit B

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BI3, INC., an Illinois corporation and KENNETH C. TOLA, JR., an Illinois resident | ) ) ) | |
| Plaintiffs, | ) ) | 08-CV-2384 |
| v. | ) ) | Judge Samuel Der-Yeghiayan |
| ALAN B. HAMOR, a New Jersey resident, WK NETWORKS, INC., a Delaware corporation, and CAMPAIGNLOCAL, INC., a Delaware corporation, | ) ) ) ) ) | Magistrate Judge Arlander Keys |
| Defendants. | ) | |

AFFIDAVIT OF ALAN B. HAMOR FOR
JOINT JURISDICTIONAL STATUS REPORT

STATE OF NEW JERSEY )
                      ) ss.
COUNTY OF MERCER )

    ALAN B. HAMOR, being duly sworn, hereby deposes and states as follows:

    1.    My name is Alan B. Hamor. I am over the age of eighteen (18), believe in the

obligations of an oath, and am competent to testify to the matters stated herein. I make this

Affidavit on my own personal knowledge.

    2.    I currently reside at 22 Meadow Lane, Pennington, New Jersey, 08534. My

residence continuously has been located at this address since at least 2006.

    3.    I am the president of a Delaware corporation entitled "WK Networks, Inc." WK

Networks, Inc. was incorporated in Delaware and has its principal place of business at 22

Meadow Lane, Pennington, New Jersey, 08534. WK Networks, Inc. continuously has been a

Delaware corporation with its principal place of business at this New Jersey address since at least

1

*Exhibit C*

2006. Attached as Exhibit "A" to this Affidavit is a copy of a Short Form Standing form issued by the Treasurer of the State of New Jersey confirming statements made in this Paragraph.

4.    I am the president of a Delaware corporation entitled "CampaignLocal Inc." CampaignLocal was incorporated in Delaware and has its principal place of business at 22 Meadow Lane, Pennington, New Jersey, 08534. CampaignLocal continuously has been a Delaware corporation with its principal place of business at this New Jersey address since at least 2006. Attached as Exhibit "B" to this Affidavit is a copy of a Short Form Standing form issued by the Treasurer of the State of New Jersey confirming statements made in this Paragraph.

FURTHER AFFIANT SAYETH NAUGHT.

Dated:  June 19, 2008

_____
ALAN B. HAMOR

Subscribed and sworn to before
me this _19th_ day of June, 2008.

_____
Notary Public

M:\12718\pleading\HamorAffidavit.doc

WAYNE S. MERNONE
Notary Public - New Jersey
2311592
My Commission Expires February 23, 2009

2

*STATE OF NEW JERSEY*
*DEPARTMENT OF TREASURY*
*SHORT FORM STANDING*

**WK NETWORKS, INC.**

*0100796232*

*With the Previous or Alternate Name*

**WHO KNOWS.COM (Alternate Name)**

*I, the Treasurer of the State of New Jersey, do hereby certify that the above-named Delaware Foreign Profit Corporation was registered by this office on October 19, 1999.*

*As of the date of this certificate, said business continues as an active business in good standing in the State of New Jersey, and its Annual Reports are current.*

*I further certify that the registered agent and registered office are:*

*Alan Hamor*
*22 Meadow Lane*
*Pennington, NJ 08534*



IN TESTIMONY WHEREOF, I have
hereunto set my hand and affixed my
Official Seal at Trenton, this
19th day of June, 2008

R. David Rousseau
*State Treasurer*

Certification# 112153144

Verify this certificate at
https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_Cert.jsp

EXHIBIT
tabbies
A

**STATE OF NEW JERSEY**
**DEPARTMENT OF TREASURY**
**SHORT FORM STANDING**

**CAMPAIGNLOCAL INC**

*0400150427*

I, the Treasurer of the State of New Jersey, do hereby certify that the above-named Delaware Foreign Profit Corporation was registered by this office on October 23, 2006.

As of the date of this certificate, said business continues as an active business in good standing in the State of New Jersey, and its Annual Reports are current.

I further certify that the registered agent and registered office are:

Wk Networks, Inc.
22 Meadow Lane
Pennington, NJ 08534



IN TESTIMONY WHEREOF, I have
hereunto set my hand and affixed my
Official Seal at Trenton, this
28th day of May, 2008

R. David Rousseau
State Treasurer

Certification# 112049850

Verify this certificate at
https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_Cert.jsp



EXHIBIT
B

Confidential When Completed

# CONSULTING AGREEMENT

THIS CONSULTING AGREEMENT is made as of this 1ˢᵗ day of August, 2006, by and between WK Networks, Inc., ("NETWORK VENDOR"), having a place of business at 22 Meadow Lane, Pennington, NJ 08534, ("Company"), and BI3, Inc. ("Consultant") an individual having a place of business at 220 W Scott Street Unit B, Chicago, IL 60610.

**Background**

The Company is engaged in the business of developing software for network-based bidding and commerce systems. Consultant has expertise and experience in areas beneficial to the Company and desires to consult with the Company in those areas of expertise. Based on Consultant's experience, the Company desires to retain the services of Consultant and Consultant desires to render such services on the terms and conditions set forth below.

IN CONSIDERATION of the foregoing and of the mutual terms set forth below, the parties, intending to be legally bound, agree as follows:

1. Retention as Consultant. The Company hereby retains Consultant, and Consultant hereby agrees to render consulting services to the Company, upon the terms and conditions set forth herein.

2. Duties. Consultant shall perform the services detailed in Appendix A, **Scope of Work**, incorporated herein in its entirety.

3. Independent Consultant Status. The parties recognize that Consultant is an independent Consultant and that the Company will not incur any liability as a result of Consultant's actions. Consultant shall at all times disclose that he is an independent Consultant of the Company. The Company shall not withhold any funds from Consultant's compensation for tax or other governmental purposes, and Consultant shall be responsible for the payment of same. Consultant shall not be entitled to receive any employment benefits offered to employees of the Company, including but not limited to: workers' compensation coverage; savings or profit sharing plans; stock option, incentive or other bonus plans; health, dental or life insurance coverage; and paid vacations. The Company shall not exercise control over Consultant.

4. Compensation. The Company shall pay to Consultant, as compensation for the services to be rendered, the amounts set out in Appendix B, **Compensation**, incorporated herein in its entirety.

Unless expressly agreed between the parties herein, the Company shall not be obligated to provide a minimum number of hours of work, nor shall Consultant be entitled to receive any compensation for hours not actually worked.

The Company shall reimburse Consultant for all ordinary and necessary expenses incurred in connection with the performance of his services hereunder, provided that timely notice of such expenses is sent to and approved by an appropriate officer or other authorized representative of the Company. Expenses totaling over five hundred dollars ($500) shall be pre-approved by the Company.

5. Term. This Agreement shall commence on the date written above and shall continue indefinitely until such time as either Consultant or the Company terminates the Agreement as provided belo

6. Termination. The parties agree that either the Company or Consultant through written notice may terminate Consultant's engagement under this Agreement at any time for any reason or for no reason. Upon termination, Consultant shall deliver all completed work and Company shall pay Consultant for completed work.

7. Confidential Information. "Confidential Information" means non-public information Company designates to Consultant as being confidential. Such designation of confidentiality shall be by writing or marking for written materials and verbally at the time of disclosure, or in a summary written document

$Exhibit$ $D$

Confidential When Completed

following a verbal disclosure, for non-written materials. Confidential Information includes, without limitation, information in tangible or intangible form relating to and/or including the Company's technology. know-how, marketing or promotional activities, business policies or practices. and information received from others that Company is obligated to treat as confidential.

Confidential Information shall not include any information, however designated. that: (i) is or subsequently becomes publicly available without Consultant's breach of any obligation owed Company; (ii) became known to Consultant prior to Company's disclosure of such information to Consultant pursuant to the terms of this Agreement; (iii) is or subsequently becomes known to Consultant from a source other than Company other than by the breach of an obligation of confidentiality owed to Company; or (iv) is independently developed by Consultant.

Consultant shall: (i) refrain from disclosing any confidential Information of Company to third parties for seven (7) years following the date that Company first discloses such Confidential Information to Consultant; (ii) take reasonable security precautions, at least as great as the precautions Consultant takes to protect its own confidential information, but no less than reasonable care. to keep confidential the Confidential Information of the Company; and (iii) refrain from using, including without limitation disclosing, reproducing, summarizing and/or distributing. Confidential Information of Company except in pursuance of Consultant's business relationship with Company, and only as otherwise provided hereunder.

Notwithstanding the obligations herein, Consultant may disclose Confidential Information of Company in accordance with a judicial or other governmental order, provided that Consultant either: (i) gives Company reasonable notice prior to such disclosure to allow Company a reasonable opportunity to seek a protective order or equivalent, or (ii) obtains written assurance from the applicable judicial or governmental entity that it will afford the Confidential Information the highest level of protection afforded under applicable law or regulation.

Consultant may disclose Confidential Information to its affiliates, employees and consultants only on a need-to-know basis. Consultant will have executed or shall execute appropriate written agreements with its affiliates, employees and consultants sufficient to enable Consultant to enforce all the provisions of this Agreement.

Consultant shall notify Company immediately upon discovery of any unauthorized use or disclosure of Confidential Information or any other breach of this Agreement by Consultant and Consultant's employees and consultants, and will cooperate with Company in every reasonable way to help Company regain possession of the Confidential Information and prevent its further unauthorized use or disclosure.

Consultant shall. at Company's request. return all originals, copies. reproductions and summaries of Confidential Information and all other tangible materials and devices provided to the Consultant as Confidential Information. or at Company's option. certify destruction of the same.

"Trade Secret Information" means that information which Company protects in accordance with state trade secret law and which has been identified by the owner as a trade secret.

Consultant shall: (i) refrain from disclosing any Trade Secret Information to third parties for as long as the disclosing party maintains the trade secret; (ii) use no less than reasonable care, to keep confidential the Trade Secret Information; and (iii) refrain from using for any purpose the Trade Secret Information except in pursuance of the business relationship between Company and Consultant, and only as otherwise provided hereunder.

8. Intellectual Property Rights. Consultant shall make prompt written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assigns to the Company all right. title and interest in and to any inventions which Consultant, alone or with others. may conceive, develop or reduce to practice, or cause to be conceived, developed or reduced to practice in the course of work performed pursuant to this Agreement, or that result from work done for the Company prior to or

Confidential When Completed

after the date of this Agreement (collectively. "Company Inventions"). Such Company Inventions shall be the exclusive property of the Company, whether patented or not.

Consultant acknowledges that all works of authorship developed in the course of work performed pursuant to this Agreement and which are protectable by copyright, are "works made for hire," as that term is defined in the United States Copyright Act (17 U.S.C. Section 101 *et seq.*). To the extent that such works do not constitute works made for hire under operation of law, Consultant hereby assign all rights. title and interest in and to such works to the Company.

Consultant will provide the Company with all assistance reasonably requested by the Company to preserve its rights to the Company Inventions and to obtain and enforce United States and foreign proprietary rights relating to any and all such Company Inventions in any and all countries. To that end Consultant will, and/or will cause its employees to, execute, verify and deliver (A) such documents and perform such other acts (including appearing as a witness) as Consultant may reasonably request for use in applying for, obtaining, perfecting, evidencing, sustaining and enforcing such proprietary rights and/or the assignment thereof, and (B) assignments to the Company or its designee of such proprietary rights. Consultant's obligation to assist the Company with respect to proprietary rights in any and all countries shall continue after the termination of this Agreement, so long as Consultant is compensated at then-standard rates. In the event the Company is unable for any reason, after reasonable effort, to secure Consultant and/or Consultant's employee(s) signature(s) on any document needed in connection with the actions specified hereinabove, Consultant hereby irrevocably designates and appoints the Company and its duly authorized officers and agents as Consultant's agent and attorney-in-fact, to act for and on Consultants and Consultant's employee(s) behalf to execute, verify and file any such documents and to do all other lawfully permitted acts to further the purposes of this section with the same legal force and effect as if executed by Consultant and/or Consultant's employee(s). Such appointment is coupled with an interest. Consultant hereby waives and quitclaims to the Company any and all claims of any nature whatsoever which Consultant now or may hereafter have for infringement of any proprietary rights assigned by Consultant to the Company.

9. Legal Relief. In the event Consultant breaches, or threatens to breach any of the covenants expressed herein. the damages to the Company will be difficult to quantify: therefore, the Company may apply to a court of competent jurisdiction for injunctive or other equitable relief to restrain such breach or threat of breach, without disentitling the Company from any other relief in either law or equity.

10. Export Regulations. Consultant acknowledges his obligations to control access to technical data under the U.S. Export Laws and Regulations and agrees to adhere to such laws and regulations with regard to any technical data received or developed under this Agreement.

11. Adherence to Laws. Consultant agrees that in carrying out his duties and responsibilities under this Agreement, he will neither undertake nor cause, nor permit to be undertaken, any activity which either (i) is illegal under any laws, decrees, rules, or regulations in effect in either the United States or any other country in which the Company has a business interest; or (ii) would have the effect of causing the Company to be in violation of any laws, decrees, rules, or regulations in effect in either the United States or any other country in which the Company has a business interest.

12. Warranties & Representations. Consultant hereby represents and warrants to Company that (1) Consultant has the right and authority to enter into this Agreement, (2) Consultant has no conflicts or other obligations which would prevent Consultant from performing under this Agreement, (3) all services, work and deliverables to be performed hereunder shall be performed by him in a professional and workmanlike manner, in accordance with the highest industry standards, and (4) all works of authorship and/or inventions shall be original unless expressly identified as otherwise by Consultant to Company.

13. Indemnification. Consultant shall defend, indemnify and hold harmless the Company and its officers, directors, employees, agents, parent, subsidiaries and other affiliates, from and against any and all damages, costs, liability, and expense whatsoever (including attorneys' fees and related disbursements) incurred by reason of (a) any failure by Consultant to perform any covenant or agreement of Consultant set

Confidential When Completed

forth herein; (b) injury to or death of any person or any damage to or loss of property which is due to the negligence and/or willful acts of Consultant; or (c) any breach by Consultant of any representation, warranty, covenant or agreement under this Agreement. The Company shall have the right to offset against any fees or commissions due Consultant under this Agreement the amount of any indemnity to which the Company is entitled under this section.

14. Entire Agreement/Amendments. This Agreement replaces and supersedes all prior agreements, relating to the subject matter hereof, between the parties to this agreement. No alteration, modification, amendment or other change of this Agreement shall be binding on the parties unless in writing, approved and executed by Consultant and an authorized officer of the Company, whether by operation of law or otherwise.

15. Assignment. This Agreement is not assignable by Consultant, whether by operation of law or otherwise. This Agreement is freely assignable by Company.

16. Governing Law. This Agreement shall be governed by and interpreted, construed and enforced in accordance with the laws of the State of New York, excluding conflicts of laws principles, and both parties further consent to jurisdiction by the state and federal courts sitting in the State of New York.

17. Invalidity. The terms of this Agreement shall be severable so that if any term, clause, or provision hereof shall be deemed invalid or unenforceable for any reason by a court of competent jurisdiction. such invalidity or unenforceability shall not affect the remaining terms, clauses and provisions hereof, the parties intending that if any such term, clause or provision were held to be invalid prior to the execution hereof, they would have executed an agreement containing the remaining terms, clauses and provisions of this Agreement.

18. Waiver of Breach. The waiver by either party hereto of any breach of the terms and conditions hereof will not be considered a modification of any provision, nor shall such a waiver act to bar the enforcement of any subsequent breach.

19. Background, Enumerations and Headings. The "Background," enumerations and headings contained in this Agreement are for convenience of reference only and are not intended to have any substantive significance in interpreting this Agreement.

20. Company Property. All Company property in the possession or control of Consultant will be returned by Consultant to the Company on demand, or at the termination of this Agreement, whichever shall come first.

21. Non-Solicitation. Consultant agrees for a period of two (2) years following termination of this agreement not to solicit, offer to hire and/or hire any Company employee.

IN WITNESS WHEREOF, the parties have executed this Agreement effective the date first written above.

For Consultant:

Name: Kenneth C. Tola, Jr.
Title: President
Company: BI3, Inc

For Company:

Name: Alan B. Hamor
Title: Chairman, CEO

Confidential When Completed

## Appendix A: Scope of Work

For the project AutmoBids.com, Consultant is to provide supporting services to assist Nimble Communications in implementing certain graphics elements into the web site.

For the project AutomoAds.com, Consultant is to provide the following services to the Company:

- Review of initial specification and preparation of a "wireframe" version of the site and application
- Creation of the base UI and supporting code for the campaign planning, keyword generation and targeting application
- Interface with applicable partners or API's
- Creation and coding of the base UI and report schema
- Testing of application
- Assistance in the installation of the application in a production environment

Confidential When Completed

## Appendix B: Compensation

For services provided regarding the AutomoBids.com project. Consultant is expected to bill approximately $3,250. which billing shall be included in the Nimble Communications billing.  Total $3.250 (for weeks ending 8/6. 8/13).

For services provided regarding the AutomoAds.com project. Consultant is expected to bill approximately $20.000 according to the following schedule:

| | |
|---|---|
| Nimble Communications billing (for weeks ending 8/6. 8/13) | $4.875 |
| Week 1 and 2 ($4.000 each) (for weeks ending 8/20. 8/27) | $8.000 |
| Week 3 and 4 ($3.000 each) (for weeks ending 9/3. 9/10) | $6.000 |

All payments should be made to BI3, Inc within 30 days of the greater of the last date as detailed in the previous paragraph or the receipt of the invoice.

Additional services for other projects. should they occur in the future. will be accounted for under a separate SOW.

Confidential When Completed

forth herein; (b) injury to or death of any person or any damage to or loss of property which is due to the negligence and/or willful acts of Consultant; or (c) any breach by Consultant of any representation, warranty, covenant or agreement under this Agreement. The Company shall have the right to offset against any fees or commissions due Consultant under this Agreement the amount of any indemnity to which the Company is entitled under this section.

14. Entire Agreement/Amendments. This Agreement replaces and supersedes all prior agreements, relating to the subject matter hereof, between the parties to this agreement. No alteration, modification, amendment or other change of this Agreement shall be binding on the parties unless in writing, approved and executed by Consultant and an authorized officer of the Company, whether by operation of law or otherwise.

15. Assignment. This Agreement is not assignable by Consultant, whether by operation of law or otherwise. This Agreement is freely assignable by Company.

16. Governing Law. This Agreement shall be governed by and interpreted, construed and enforced in accordance with the laws of the State of New York, excluding conflicts of laws principles, and both parties further consent to jurisdiction by the state and federal courts sitting in the State of New York.

17. Invalidity. The terms of this Agreement shall be severable so that if any term, clause, or provision hereof shall be deemed invalid or unenforceable for any reason by a court of competent jurisdiction, such invalidity or unenforceability shall not affect the remaining terms, clauses and provisions hereof, the parties intending that if any such term, clause or provision were held to be invalid prior to the execution hereof, they would have executed an agreement containing the remaining terms, clauses and provisions of this Agreement.

18. Waiver of Breach. The waiver by either party hereto of any breach of the terms and conditions hereof will not be considered a modification of any provision, nor shall such a waiver act to bar the enforcement of any subsequent breach.

19. Background, Enumerations and Headings. The "Background," enumerations and headings contained in this Agreement are for convenience of reference only and are not intended to have any substantive significance in interpreting this Agreement.

20. Company Property. All Company property in the possession or control of Consultant will be returned by Consultant to the Company on demand, or at the termination of this Agreement, whichever shall come first.

21. Non-Solicitation. Consultant agrees for a period of two (2) years following termination of this agreement not to solicit, offer to hire and/or hire any Company employee.

IN WITNESS WHEREOF, the parties have executed this Agreement effective the date first written above.

For Consultant:

Name: Kenneth C. Told, Jr.
Title: President
Company: Bl3, Inc.

For Company:

Name: Alan B. Hamor
Title: Chairman, CEO