*MHN*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BI3, an Illinois Corporation, and KENNETH C. TOLA, JR., | ) ) ) | |
| Plaintiffs | ) ) | No. 08 C 2384 |
| v. | ) ) ) | |
| ALAN B. HAMOR, WK NETWORKS, INC., a Delaware Corporation, and CAMPAIGNLOCAL, INC., a Delaware Corporation, | ) ) ) ) ) ) | Magistrate Judge Arlander Keys |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Kenneth Tola, an information technology expert and the president and sole stockholder of BI3, sued Alan Hamor, WK Networks, Inc. and CampaignLocal, Inc., invoking diversity jurisdiction. The case is presently before the Court on the defendants' motion to dismiss Count XIII of the Amended Complaint. For the reasons explained below, the motion is granted.

Factual & Procedural Background

Beginning in July or August 2006, Mr. Tola and BI3 began a professional relationship with Alan Hamor and two companies with which he was involved, Auto Bid Systems, Inc. ("ABS") and WK Networks, Inc.; during the relevant time period, Mr. Hamor served as the chairman and CEO of both companies. All of the dealings between the parties had to do with work Mr. Tola and BI3 were performing in connection with ABS's AutomoBids.com website and in

connection with a website ABS was trying to develop, AutomoAds.com, a program designed to facilitate online Search Engine Marketing campaigns. The parties' relationship was governed by a Consulting Agreement dated August 1, 2006; the agreement was executed by Mr. Tola on September 29, 2006 and by Mr. Hamor on October 2, 2006.

In November 2006, Mr. Hamor represented to Mr. Tola that WK Networks had decided to redirect its efforts from AutomoAds to building a new Search Engine Marketing ("SEM") management platform to be called CampaignLocal; according to Mr. Hamor, CampaignLocal was to be related to the other companies in that WK Networks would own it, and ABS would be a re-seller of its services. Initially, CampaignLocal's focus was to provide a custom set of online tools that allowed users to easily create search engine marketing campaigns for different types of automobiles.

Mr. Tola and BI3 began work on various CampaignLocal efforts in November 2006 and continued to work on CampaignLocal projects through the end of December 2006; for those efforts, BI3 was paid - though, according to Mr. Tola, only partially and sporadically - pursuant to the terms of the August 1, 2006 Consulting Agreement. Because of Mr. Hamor's failure to pay the full amount due BI3, in early 2007, Mr. Tola advised Mr. Hamor that he would stop all work on his companies' projects; as a result, the

parties renegotiated the terms of the Consulting Agreement, and BI3 went back to work.

At the same time, in early January 2007, Mr. Hamor told Mr. Tola that he wanted to change the focus of CampaignLocal from a search engine marketing submission company to a multi-media campaign management company, with potential customers across all industry sectors and beyond the automobile industry. As a result of this shift in focus, and because Mr. Tola was aware of a potential conflict brewing between ABS and Mr. Hamor, Mr. Tola and BI3 made numerous modifications to the CampaignLocal platform and created an entirely new codebase for the new version of CampaignLocal.

Throughout the first quarter of 2007, Mr. Tola and BI3 continued to work on various CampaignLocal projects, as well as other projects for WK Networks and Mr. Hamor. BI3 completed its last task for WK Networks in August 2007; during the course of the relationship, BI3 received $51,000 in payments – far less than contemplated by the Consulting Agreement.

For a variety of reasons – some related to the companies' failure to pay BI3 and some related to the conflict between ABS and Mr. Hamor (which are not relevant at this time) – relations between the parties broke down. And, on April 25, 2008, Mr. Tola and BI3 sued Mr. Hamor, WK Networks and CampaignLocal in a 10-count complaint alleging, *inter alia*, breach of contract, unjust

3

enrichment, fraud, breach of fiduciary duty, conversion, and other state law claims. On May 13, 2009, Mr. Tola and BI3 amended their complaint to add three more claims: an additional breach of fiduciary count, a count seeking a declaratory judgment that Mr. Hamor could personally be held liable to the plaintiffs, and a count alleging violation of the Stored Wire and Electronic Communications Act, 18 U.S.C. §2701, et seq. Mr. Hamor has moved to dismiss this last count, Count XIII, under Federal Rule of Civil Procedure 12(b)(6).

## Discussion

Dismissal under Rule 12(b)(6) is proper when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Weizeorick v. Abn Amro Mortgage Group, Inc.*, 337 F.3d 827, 830 (7th Cir. 2003). When considering a motion to dismiss under Rule 12(b)(6), the Court looks to the sufficiency of the complaint: the Court accepts all well-pled allegations as true, and draws all reasonable inferences in favor of the plaintiff. *See, e.g., Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977-78 (7th Cir.1999). The Court does not ask whether Plaintiffs will ultimately prevail; rather, it asks whether Plaintiffs are entitled to offer evidence to support their claims against Defendants. *E.g., Smith v. Cash Store Mgmt., Inc.*, 195 F.3d 325, 327 (7th Cir. 1999).

Count XIII alleges that CampaignLocal maintained a facility

through which electronic communications service was provided to Mr. Tola, among others, and that, without authorization, Mr. Hamor intentionally accessed that facility and obtained electronic communications addressed to and intended for Mr. Tola. Amended Complaint, ¶¶239-240. Mr. Hamor argues that this claim must be dismissed because the allegations of the complaint show that the statute is inapplicable and that Mr. Hamor's actions were, in fact, authorized. The Court agrees.

The Stored Wire and Electronic Communications and Transactional Records Access Act provides that,

> [e]xcept as provided in subsection (c) of this section, whoever--
> (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or
> (2) intentionally exceeds an authorization to access that facility;
> and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

18 U.S.C. §2701(a). The Act "does not apply with respect to conduct authorized – (1) by the person or entity providing a wire or electronic communications service . . ." Id., §2701(c).

Although this provision spells out criminal penalties for violations, the Act also includes a civil provision, which states that, "[e]xcept as provided in section 2703(e), any provider of electronic communication service, subscriber, or

other person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from the person or entity which engaged in that violation such relief as may be appropriate." 18 U.S.C. §2707(a).

Putting aside for the moment the question of whether CampaignLocal can fairly be described as the type of facility covered by the statute – a question the Court may not be able to, but need not, answer at this point, it is clear that Mr. Hamor's access to CampaignLocal could not be described, under any circumstances consistent with the allegations of the complaint, as unauthorized.

According to the complaint, CampaignLocal is a "Search Engine Marketing management platform" owned by WK Networks. *See* Complaint, ¶¶50, 51. The initial focus of CampaignLocal was "to provide a custom set of online tools that allowed users to easily create SEM campaigns for different types of automobiles;" that focus later changed "from an SEM submissions company to a multi-media campaign management company whose potential customers would not be limited to the automobile industry." *Id.*, ¶¶52, 67. The amended complaint alleges that CampaignLocal "engages in the business of search engine marketing management and search engine optimization services, including campaign

management, consulting, keyword generation and research, and other services incident to the management of online search engine marketing campaigns." Amended Complaint, ¶¶213, 214. Mr. Hamor "dominates the affairs of" CampaignLocal; he is the "sole director of" and "sole decisionmaker with respect to the affairs of" CampaignLocal. Amended Complaint, ¶¶225, 226, 229. He is, in other words, CampaignLocal. Given these allegations, it is impossible to conceive that Mr. Hamor's access to CampaignLocal could be unauthorized – who but Mr. Hamor would authorize or refuse authorization for such access?

The Court's conclusion that the Stored Wire and Electronic Communications Act would not apply to Mr. Hamor in this context is bolstered by the statute's purpose: it was designed to target computer hackers, outsiders who trespass electronically on a facility's property; it prohibits unauthorized access to the facility, and would not protect the plaintiffs against misuse of information or property if access to the facility was authorized. *E.g., Lasco Foods, Inc. v. Hall & Shaw Sales, Marketing & Consulting, LLC*, 600 F.Supp.2d 1045, 1049 (E.D. Mo. 2009); *Sherman & Co. v. Salton Maxim Housewares, Inc.*, 94 F.Supp.2d 817, 821 (E.D. Mich. 2000). Given that Mr. Hamor's access to the CampaignLocal facility was unquestionably authorized (regardless of whether Mr. Tola ever gave him permission to access information or material intended for him),

7

Count XIII necessarily fails. The statute simply does not apply in this context.

## Conclusion

For the reasons explained above, the defendants' motion to dismiss Count XIII [#52] is granted.

Dated: July 15, 2009

        ENTER:

        _____
        ARLANDER KEYS
        United States Magistrate Judge