UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BI3, INC., an Illinois Corporation, and KENNETH TOLA, JR., | ) ) ) | |
| Plaintiffs, | ) ) | 08 CV 2384 |
| v. | ) ) | |
| ALAN B. HAMOR, WK NETWORKS, INC., a Delaware Corporation, and CAMPAIGNLOCAL, INC., a Delaware Corporation, | ) ) ) ) ) ) | Magistrate Judge Young B. Kim

January 3, 2011 |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

This multi-count diversity suit centers around Kenneth Tola, Jr.'s and BI3, Inc.'s ("the plaintiffs") allegations that Alan Hamor, WK Networks, Inc., and CampaignLocal, Inc. ("the defendants), failed to pay them money owed in connection with their work on various technology consulting projects. The plaintiffs also allege that the defendants fraudulently coerced Tola into assigning to CampaignLocal his rights to a website-tracking invention called Data Trender, which he had developed along with a business contact, Earl Grant-Lawrence. Currently before the court is the defendants' motion to dismiss six counts of the amended complaint under Federal Rule of Civil Procedure 12(b)(7) for failure to join Grant-Lawrence. For the following reasons, the Defendants' Motion to Dismiss Counts IV, V, VI, VII, VIII, and IX of the Amended Complaint For Failure to Join a Necessary Party is granted in part and denied in part:

## Procedural History

On April 25, 2008, the plaintiffs filed their complaint seeking damages as well as equitable and declaratory relief. The complaint includes claims for breach of contract, quantum meruit, unjust enrichment, fraud, breach of fiduciary duty, and conversion. (R. 1.) The defendants filed counterclaims seeking declaratory relief and damages based on claims for breach of contract, indemnification, misappropriation of trade secrets, breach of fiduciary duty, tortious interference with business relationships, and unjust enrichment. (R. 11.) In June 2008 the parties consented to the jurisdiction of Magistrate Judge Keys, *see* 28 U.S.C. § 636(c), and began the discovery process.

Following the completion of fact discovery both sides moved for summary judgment on their opponents' claims. On May 12, 2010, this case was reassigned to this court. (R. 107.) The next day, the plaintiffs submitted in support of their opposition to the defendants' summary judgment motion an affidavit signed by Grant-Lawrence, stating that he and Tola invented Data Trender together and that he signed an assignment of his rights in Data Trender to CampaignLocal because Hamor led him to believe that he was not giving up his rights as an inventor. (R. 103, Grant-Lawrence Aff. ¶ 23.) In response, the defendants filed the current motion to dismiss six counts of the amended complaint pursuant to Rule 12(b)(7), arguing that Grant-Lawrence is a necessary party under Rule 19(a). They argue that Grant-Lawrence must be joined, or if joinder is not feasible, that the six claims pertaining to the Data Trender assignment must be dismissed. (R. 118.)

Before setting a briefing schedule on the current motion this court held a settlement conference with the parties on July 20, 2010. (R. 128.) The parties reached an agreement in principal that day, but needed additional time to finalize the details. Three months later, on October 18, 2010, the parties informed the court that they had not yet finalized the details of their agreement. Based on this report, the court set a briefing schedule on the current motion to dismiss. (R. 133, 134.) The parties completed briefing on December 10, 2010, and the motion is ripe for resolution.

**Facts**

The facts relevant to the current motion are those surrounding Grant-Lawrence's involvement in the design and development of—and eventual assignment of rights to—the Data Trender invention. Because in "ruling on a dismissal for lack of joinder of an indispensable party, a court may go outside the pleadings and look to extrinsic evidence," *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 480 n.4 (7th Cir. 2001), the following facts are drawn from the amended complaint and the documents the parties submitted in support of their briefs on the current motion. In considering the current motion to dismiss under Rule 12(b)(7), the court accepts the allegations in the complaint as true. *Id.* at 479 n.2.

Tola, an Illinois citizen and the president and sole shareholder of BI3, provides "multi-tiered, distributed solutions" in the information technology field. (R. 11 ¶¶ 1-2, 4.) Hamor is a New Jersey citizen and the Chairman and CEO of WK Networks and CampaignLocal. (Id. ¶¶ 5, 7, 9.) In 2006 Tola began providing consulting services to WK

3

Networks on a project known as AutomoAds, consisting of "a database and web-based interface that provided custom tools which allowed a user to generate a list of geographically based keywords for the automotive industry." (Id. ¶¶ 21, 24.) In November 2006 Hamor represented to BI3 that WK Networks "had decided to redirect efforts from AutomoAds to building a new Search Engine Marketing management platform to be called CampaignLocal." (Id. ¶ 50.) BI3 began working on the CampaignLocal project that same month. (Id. ¶ 53.)

In February 2007 Tola and Grant-Lawrence—a citizen of Texas—came up with an idea for website tracking technology that they called Data Trender. (R. 11 ¶ 133.) According to Grant-Lawrence's affidavit, he and Tola came up with the idea while talking on the phone about issues related to website tracking. (R. 118-3 ¶ 12.) The idea was for a website-tracking invention that provided "a way of sitting between a client requesting a remote service, web content, etc. . . . and a server that contains the desired content without either side being aware" of the tracker's presence. (Id.) The overall idea was Tola's, but Grant-Lawrence "provided significant implementation details" during the conversation "that significantly altered the original design." (Id.)

Shortly after this conversation Tola called Hamor and told him he planned to cut back on the work he was doing for CampaignLocal in order to focus on developing the Data Trender idea with Grant-Lawrence. (R. 11 ¶ 135.) Hamor then called Tola and Grant-Lawrence back and told them that he had pitched the Data Trender idea to his contacts at

4

Google, Yahoo, and Microsoft and that they would be interested in purchasing the idea if they could prove it worked. (Id. ¶ 137; R. 118-3 ¶ 14.) Grant-Lawrence attests that Hamor told them that his contacts wanted to deal with Hamor or CampaignLocal and that it would be best to present Data Trender as an idea that CampaignLocal planned "to spin off into a new company." (R. 118-3 ¶ 17.) Hamor convinced Tola and Grant-Lawrence that they needed to develop a prototype and file a patent application quickly to protect the idea in upcoming pitches to potential purchasers. (Id.)

During March and April 2007, Grant-Lawrence worked to develop the Data Trender prototype while Tola focused on the patent prosecution side. (R. 118-3 ¶¶ 19-20.) After the patent application was filed, Hamor sent Grant-Lawrence and Tola a document titled "Assignment" which would transfer their rights in Data Trender to CampaignLocal ("the Data Trender Assignment"). (R. 11 ¶ 148.) According to Grant-Lawrence, he and Tola "questioned what the document was for because it appeared that we were giving up our rights as inventors." (R. 118-3 ¶ 22.) On April 18, 2007, Tola and Grant-Lawrence spent five hours on the phone with Hamor. (Id. ¶ 23; R. 11 ¶¶ 149-57.) The plaintiffs allege and Grant-Lawrence avers that during this conversation Hamor told them that a corporation, rather than individuals, had to file the provisional patent application and that the language in the Data Trender Assignment was just "legalese" which would not divest them of their rights as inventors. (R. 11 ¶¶ 154, 156; R. 118-3 ¶ 23.) Because they believed that they were merely allowing CampaignLocal to file a provisional patent application with the United States Patent

5

& Trademark Office without relinquishing their rights as inventors, Tola and Grant-Lawrence agreed to the Data Trender Assignment. (R. 11 ¶ 156.)

**Analysis**

In the current motion the defendants argue that pursuant to Rule 19(a), Grant-Lawrence must be joined in the amended complaint's counts four through nine, which attack the validity of the Data Trender Assignment under several theories. The defendants argue that Grant-Lawrence is a necessary party to these counts because his asserted ownership interest in Data Trender would be impaired by the relief Tola seeks. The defendants also argue that if this court lacks personal jurisdiction over Grant-Lawrence, counts four through nine must be dismissed. The plaintiffs argue that Grant-Lawrence is not a person who must be joined under Rule 19(a), and that even if he were, his joinder is not feasible because personal jurisdiction is lacking.

"The purpose of Rule 19 is to 'permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources.'" *Askew v. Sheriff of Cook County, Ill.*, 568 F.3d 632, 634 (7th Cir. 2009) (quoting *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir. 1990)). That policy must be balanced against a federal court's reluctance to deprive a plaintiff of his chosen forum by dismissing for failure to join. *Id.*; *Davis*, 268 F.3d at 481. The court analyzes a motion to dismiss for failure to join under a two-step inquiry. *Davis*, 268 F.3d at 481. First the court determines whether a party is one who must be joined if feasible under Rule 19(a)—in other words,

6

whether the party is "necessary." *Id.* If a person meets the Rule 19(a) criteria but joinder is not feasible—usually because joinder would defeat subject-matter jurisdiction or because the party is not subject to personal jurisdiction—the court turns to Rule 19(b) to "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b); *Askew*, 568 F.3d at 635. Rule 19(b) provides a list of four factors that the court must engage in making that determination, "with an emphasis on practical measures that will allow either the entire suit or part of it to go forward." *Askew*, 568 F.3d at 635.

The defendants argue that Grant-Lawrence must be joined in counts four through nine because "he has an interest in the subject matter of this action and may be impaired from protecting that interest if he is not joined." (R. 136 at 3.) Grant-Lawrence must be joined under Rule 19(a) if: (1) complete relief cannot be accorded in his absence; (2) Grant-Lawrence's ability to protect his interest will be impaired if the claims move forward without him; or (3) the existing parties face a substantial risk of multiple or inconsistent obligations if he is not joined. Fed. R. Civ. P. 19(a); *Davis*, 268 F.3d at 481. Here, counts four, five, six, and eight all center on the plaintiffs' assertions that the Data Trender Assignment is invalid. Counts four and five specifically seek rescission of the Data Trender Assignment while counts six and eight respectively assert that the Data Trender Assignment is the product of conversion and fails for want of consideration. As a party to the Data Trender Assignment, Grant-Lawrence has a practical stake in the outcome of these counts, and proceeding without

7

him may impair his ability to protect that stake. *See* Fed. R. Civ. P. 19(a)(1)(B)(i); *United States ex rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 479 (7th Cir. 1996). It has long been held that in a suit to set aside a contract, all parties to the contract—as Grant-Lawrence is here—fall squarely within the terms of Rule 19(a). *See Davis*, 268 F.3d at 484; *Hall*, 100 F.3d at 479 (characterizing as a "core principle" of common law the tenet that a party whose interests may be affected by an action to set aside a contract is "indispensable").

The plaintiffs acknowledge the rule that all parties to a disputed contract are necessary under Rule 19(a), but assert without citation that "it is not a *per se* rule." (R. 135 at 8.) They argue, again without citation, that Grant-Lawrence is not a necessary party to the current dispute because rescission of the Data Trender Assignment will "in no way impair or impede Grant-Lawrence's right" in the patent application, because if their claims succeed, "Grant-Lawrence would receive a benefit in his ownership rights being returned to him." (Id.) Essentially, the plaintiffs argue that they will adequately represent Grant-Lawrence's interests in this suit. Putting aside that adequate representation typically factors into the indispensability analysis under Rule 19(b) rather than the necessity analysis under Rule 19(a), *see, e.g., ISB Dev. Corp. v. Kopko*, No. 09 CV 3643, 2010 WL 2723181, at *4 (N.D. Ill. July 1, 2010), neither party has presented any evidence regarding whether Grant-Lawrence wants the Data Trender Assignment to stand or to be rescinded. Even if Grant-Lawrence supports rescission, this is not a case where the plaintiffs have shown that they and the absent party have an "identity of interests," *see Extra Equipamentos Exportacao Ltda. v. Case Corp.*, 361

8

F.3d 359, 364 (7th Cir. 2004), and "mere similarity" is not enough, *see Burger King Corp. v. American Nat'l Bank & Trust Co. of Chicago*, 119 F.R.D. 672, 678 (N.D. Ill. 1988). Because all the plaintiffs have given this court is their unsupported promise to represent Grant-Lawrence's unidentified interests, their argument does not move him outside the rule that he is a necessary party to claims four through six and eight as a party to the challenged contract.[1]

The Rule 19(a) calculus is less straight-forward with respect to counts seven and nine, in part because of the peculiar form in which the claims are presented. Count seven is labeled "breach of duty," and alleges that in convincing Tola to sign the Data Trender Assignment, Hamor took on a duty to protect Data Trender's provisional patent application, and that if Hamor allowed the provisional patent application to expire, and if, as a result, CampaignLocal lost the priority filing date for the patent application, that would cause "a material risk to the value of the patent asset." (R. 11 ¶¶ 183-86.) Because the plaintiffs are claiming damages here in their asserted role as the proper owners of the Data Trender invention, and because they can only be found to assume that role if the Data Trender Assignment is rescinded or otherwise found invalid, Grant-Lawrence is a necessary party to count seven. *See Hall*, 100 F.3d at 479.

---

[1] The plaintiffs devote much of their response to arguing that the defendants waived any assertion that Grant-Lawrence is necessary under any prong of Rule 19 other than 19(a)(1)(B)(i) by failing to develop any argument with respect to 19(a)(1)(A) or (a)(1)(B)(ii). Having decided that the defendants have shown necessity under Rule 19(a)(1)(B)(i), the court need not resolve the waiver dispute.

9

The same cannot be said, however, with respect to count nine. In count nine the plaintiffs assert that Tola is a shareholder of CampaignLocal and allege that Hamor has breached his fiduciary duty to CampaignLocal's shareholders if he allowed the priority date for the Data Trender provisional patent application to expire. (Id. ¶¶ 194-200.) In responding to the current motion, the plaintiffs explain that this count "is in the nature of a derivative suit for the benefit of [CampaignLocal] and seeks damages for" CampaignLocal. (R. 135 at 3.) A shareholder derivative suit allows a shareholder to bring suit on behalf of a corporation against its directors or a third party. *Hale v. Chu*, 614 F.3d 741, 743 n.1 (7th Cir. 2010). Although the corporation is a necessary party, *id.*, the defendants cite no cases suggesting that Grant-Lawrence is a necessary party because he is a shareholder of CampaignLocal. In true shareholder derivative suits under Rule 23.1, the named plaintiff is not required to represent all shareholders as long as he represents the interests of similarly situated shareholders. *Halsted Video, Inc. v. Guttillo*, 115 F.R.D. 177, 179 (N.D. Ill. 1987). Because count nine does not turn on the validity of the Data Trender Assignment, and because the defendants have not shown how Grant-Lawrence is connected to the plaintiffs' allegations surrounding the claimed breach of fiduciary duty, Grant-Lawrence is not a necessary party to this particular claim.

Having decided that Grant-Lawrence must be joined in counts four through eight, the next task is to determine feasibility. *See Askew*, 568 F.3d at 635. It is undisputed that Grant-Lawrence could be joined in this suit without destroying diversity—he is a citizen of Texas

while the plaintiffs and defendants are citizens of Illinois and New Jersey, respectively—but the parties disagree over whether he is subject to personal jurisdiction in this court. In their opening memorandum in support of dismissal, the defendants' only argument with respect to personal jurisdiction is that because Tola and Grant-Lawrence conceived and developed the Data Trender invention together, they "must also have engaged in extensive telephone and email communications" between Texas and Illinois. (R. 118 at 6.) After the plaintiffs argued in response that personal jurisdiction is lacking, the defendants give the issue more attention in their reply brief. They argue that Grant-Lawrence is subject to general jurisdiction in Illinois because 50% of his work in 2009 was related to work with BI3, an Illinois corporation. (R. 136 at 11-12.) They also argue that Grant-Lawrence is subject to specific jurisdiction because his activities in working with Tola on the Data Trender patent show that he "'purposefully availed' himself of the privilege of conducting business in Illinois." (Id. at 12.)

"A federal district court exercising diversity jurisdiction has personal jurisdiction . . . only if a court of the state in which it sits would have such jurisdiction." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997). The Illinois long-arm statute, 735 ILCS 5/2-209(c), includes a catch-all provision that allows "courts to exercise jurisdiction on any basis permitted by the Illinois and United States Constitutions." *Central States S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000). Finding no operative difference in the limits on personal jurisdiction imposed by the

Illinois and federal Constitutions, the Seventh Circuit has collapsed the analysis under the "minimal contacts" test. *Kinslow v. Pullara*, 538 F.3d 687, 691 (7th Cir. 2008). Under that test, jurisdiction is proper where a person has taken actions that create a "substantial connection with the forum state," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation omitted), such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice," *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 716 (7th Cir. 2002) (internal quotation omitted). "Personal jurisdiction can be either general or specific, depending on the extent of the defendant's contacts with the forum state." *uBid, Inc. v. The GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010).

General jurisdiction exists when a party's contacts with a forum state are so continuous and systematic that "it can be treated as present in the state for essentially all purposes." *GoDaddy*, 623 F.3d at 425-26. Here the defendants argue for the first time in their reply brief that Grant-Lawrence is subject to general jurisdiction in Illinois based on the work he performed for BI3, an Illinois corporation. But as the plaintiffs correctly point out, arguments raised for the first time in a reply are deemed forfeited. *See Abstract & Title Guar. Co., Inc. v. Chicago Ins. Co.*, 489 F.3d 808, 812 (7th Cir. 2007). Even if the defendants had properly raised the argument, they have not come close to establishing that Grant-Lawrence's contacts with Illinois are sufficiently pervasive to subject him to general jurisdiction. In support of their general-jurisdiction argument, the defendants simply cite Grant-Lawrence's testimony that in 2009 at least 50% of his income was related to work with

BI3 and that he and Tola had worked together for 10 years. (R. 136 at 11-12.) The defendants present no evidence as to what that work entailed, where it was performed, or even whether Tola was an Illinois citizen during the entirety of their business dealings. In *GoDaddy*, the Seventh Circuit found that the defendant's contacts with Illinois did not meet the demanding standard for general jurisdiction even though it had "extensive and deliberate contacts" here, including the marketing and sale of Internet domain names and hundreds of thousands of customers in Illinois who generated "many millions of dollars" for the company. 623 F.3d at 424-426. Because the defendants have not shown that Grant-Lawrence has a level of contact with Illinois that even approaches those found lacking for general jurisdiction in *GoDaddy*, the argument would fail even had it been raised properly.

Whether Grant-Lawrence is subject to specific jurisdiction in the current suit merits closer attention. For this court to assert specific jurisdiction over Grant-Lawrence, he must have purposefully directed his activities to Illinois residents and the injuries alleged in this lawsuit must "arise out of or relate to those activities." *See Burger King*, 471 U.S. at 472 (internal quotation omitted). In other words, the court "must assess whether it is fundamentally fair to require the [person] to submit to the jurisdiction of the court *with respect to this litigation.*" *Kinslow*, 538 F.3d at 691 (internal quotation omitted) (emphasis in original). The crucial question in the specific-jurisdiction analysis is foreseeability—the party must have purposefully availed himself of the privileges of engaging in activities in the forum state such that he could reasonably anticipate being brought into court there. *Burger*

13

*King*, 471 U.S. at 475. "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Id*.

Here, the defendants argue that Grant-Lawrence is subject to specific jurisdiction in this suit because he "conceived of and developed an invention with an Illinois resident," and the challenged claims "arise out of the creation and assignment of the invention." (R. 136 at 12.) The only specific contacts they point to is their assertion that Tola and Grant-Lawrence "must also have engaged in extensive telephone and email communications." (R. 118 at 6.) As the party asserting jurisdiction, it is the defendants' burden to demonstrate that the jurisdictional prerequisites are met, *Kinslow*, 538 F.3d at 690, but all the defendants have given this court are general and speculative assertions. There is no evidence regarding whether Tola and Grant-Lawrence entered into a contract to develop the Data Trender patent or whether any of the actual design of the technology took place in Illinois. In fact, the amended complaint suggests that Grant-Lawrence developed the prototype on his own in Texas. Also, there is no evidence regarding whether Tola and Grant-Lawrence intended to market or license the Data Trender in Illinois or establish any kind of continuing obligations in Illinois. The defendants' unsupported assertions that Tola and Grant-Lawrence must have had on-going telephone and email contact and that much of the conduct underlying the challenged claims took place via a phone call between Tola, Grant-Lawrence, and Hamor are insufficient to satisfy their burden. Although on-going telephone communications and email

contacts are relevant factors in the minimum-contacts analysis, the defendants have not cited any cases to suggest that such electronic contacts, by themselves, are sufficient to establish specific jurisdiction. Instead, telephone and email communications are treated as one star in the constellation of contacts required to establish jurisdiction. For example, in *Heritage House Restaurants, Inc. v. Contintental Funding Group, Inc.*, 906 F.2d 276, 281 (7th Cir. 1990), the Seventh Circuit noted that in connection with the provision of the Illinois long-arm statute that pertains to transacting business in Illinois (rather than the catch-all provision applicable here), telephone and email contacts can justify specific jurisdiction where that is the natural basis for a business relationship. But there the court found that the defendant had an "ongoing practice of transacting business with an Illinois corporation in Illinois" that was sufficient to establish jurisdiction under the business-transaction prong of the Illinois long-arm statute. *Id.* More recent cases show that "making telephone calls and mailing payments into the forum state are insufficient bases for jurisdiction," *Federated Rural Elec. Ins. Corp. v. Inland Power & Light Co.*, 18 F.3d 389, 395 (7th Cir. 1994), and must be evaluated collectively with the defendant's other contacts with the forum state, *Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1361 (7th Cir. 1996); *Abbott Labs., Inc. v. Biovalve Techs., Inc.*, 543 F. Supp. 2d 913, 921 (N.D. Ill. 2008). Here the defendants do not argue that Grant-Lawrence engaged in any business transactions in Illinois, nor do they point to other contacts that would justify extending specific jurisdiction here. Without more, Grant-Lawrence's telephone calls with Tola fall more on the "random,"

"fortuitous," and "attenuated" end of the personal jurisdiction spectrum than they do on the "purposeful availment" end. *See Burger King*, 471 U.S. at 475. Accordingly, this court lacks personal jurisdiction over Grant-Lawrence and his joinder in the challenged claims is not feasible. *See Askew*, 568 F.3d at 635.

Turning to Rule 19(b), where joinder is not feasible, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Rule 19(b) lays out four factors for the court to consider: (1) the extent to which a judgment rendered without the absent party might prejudice the existing parties or the absent person; (2) the extent to which any prejudice could be mitigated by shaping the relief or including protective provisions in the judgment; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the case were dismissed for non-joinder. Here, the plaintiffs put the bulk of their eggs in the first factor's basket, arguing that Grant-Lawrence will not be prejudiced if the case proceeds without him because Tola will adequately represent his interests. (R. 135, Response at 12.) But two pages later, the plaintiffs concede that they do not know whether Grant-Lawrence wants the assignment rescinded, or whether he shares their other positions. (Id. at 14.) Instead, they argue that if for some reason he does not share their interests, then he will still be adequately represented because CampaignLocal "is adequately defending the claims." (Id.) The plaintiffs leave no room for the possibility that Grant-Lawrence has interests that do not align with either side. But because Grant-Lawrence

16

is an independent third party, and not, for example, a wholly owned subsidiary of BI3, this court cannot presume that his interests line up with the plaintiffs'. *See Extra Equipamentos*, 361 F.3d at 363-64. Perhaps Grant-Lawrence agrees with Tola that consideration was never exchanged for the assignment but would prefer that consideration be paid and the assignment enforced rather than the assignment rescinded. Because this court has been left to speculate about Grant-Lawrence's interests, it is not clear that the plaintiffs will adequately represent his interests if the case proceeds without him.

As for the remaining factors, none of them weigh in favor of moving forward with the claims. The plaintiffs argue that the court could shape the judgment such that the assignment would be rescinded only with respect to Tola and thereby avoid prejudice to Grant-Lawrence. But it is unclear that this court could craft a judgment that would avoid an impact on Grant-Lawrence in the form of collateral estoppel. *See Extra Equipamentos*, 361 F.3d at 362-63 (factoring collateral-estoppel potential into Rule 19(b) analysis). If the defendants win on the merits and the assignment is held to be valid, the defendants could argue that Grant-Lawrence was in privity with Tola, and thus is collaterally estopped from challenging the validity of the assignment down the road. *See Kalush v. Deluxe Corp.*, 171 F.3d 489, 493 (7th Cir. 1999). Conversely, if Tola achieves rescission and Grant-Lawrence seeks to enforce the contract, he could again run into a collateral estoppel barrier. Either way, it is unclear that the court could find a way to enter a judgment that would avoid prejudice to Grant-Lawrence. The plaintiffs do not develop any argument with respect to the third factor,

17

but concede under the fourth factor that there are other forums where they could bring their claims. (R. 135 at 15.) Accordingly, despite the court's reluctance to deprive the plaintiffs of their chosen forum, the Rule 19(b) factors weigh toward a finding that counts four through eight must be dismissed for failure to join an indispensable party.

## Conclusion

For the foregoing reasons, the Defendants' Motion to Dismiss Counts IV, V, VI, VII, VIII, and IX of the Amended Complaint For Failure to Join a Necessary Party is granted in part and denied in part. The court notes that in their response, the plaintiffs ask for "an opportunity to have Grant-Lawrence voluntarily submit to the jurisdiction of the Court" if he is found to be an indispensable party. (R. 135 at 2.) Because lack of personal jurisdiction is a barrier to litigation that is waiveable, *see RAR*, 107 F.3d at 1280, the court agrees that it is appropriate to give Grant-Lawrence that opportunity. Accordingly, the plaintiffs may have until January 14, 2011, to inform this court whether Grant-Lawrence submits to the jurisdiction of this court. If he does not, this court will enter an order on that date dismissing counts four through eight of the amended complaint.

**ENTER:**

_____
Young B. Kim
United States Magistrate Judge