# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BI3, INC. an Illinois Corporation, and KENNETH TOLA, Jr., | ) ) ) | Case No. 08 CV 2384 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Magistrate Judge Young B. Kim |
| ALAN B. HAMOR, WK NETWORKS, Inc. a Delaware Corporation, and CAMPAIGNLOCAL, Inc., a Delaware Corporation, | ) ) ) ) ) | |
| Defendants. | ) ) | October 20, 2011 |

## MEMORANDUM OPINION and ORDER

Plaintiffs Kenneth Tola, Jr. and BI3, Inc. (together, "the plaintiffs"), then citizens of

Illinois, brought multiple state law claims against Defendants Alan Hamor, WK Networks,

Inc., and Campaign Local, Inc. (collectively, "the defendants"), all citizens of New Jersey

and/or Delaware, and alleged that the court had diversity jurisdiction over those claims.

During the course of the litigation, the plaintiffs moved to New Jersey and became citizens

of that state. A year later, the plaintiffs filed an amended complaint that explicitly

incorporated every allegation and claim asserted in the original complaint and asserted new

claims. Discovery continued, and at Tola's June 2009 deposition, the defendants learned that

he had moved to New Jersey. Despite their awareness of Tola's change in citizenship, the

defendants continued to litigate the case for over two years. Just days before trial was

scheduled to begin, the defendants moved to dismiss the amended complaint pursuant to

Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction. For the following reasons, the motion is denied:

## Procedural History

The plaintiffs initiated this case in April 2008 by filing a complaint for damages and for equitable and declaratory relief. The complaint alleged that Kenneth Tola was a resident and citizen of Illinois, (R. 1, Compl. ¶ 1), and that BI3, Inc. ("BI3") a corporation owned by Tola, was organized under Illinois law and had its principal place of business in Illinois, (R.1 ¶¶ 3,4). Regarding the citizenship of the defendants, the complaint alleged that Alan Hamor was a citizen of New Jersey, (R.1 ¶ 5), and that WK Networks, Inc. ("WK Networks") and CampaignLocal, Inc. ("CampaignLocal") were both Delaware corporations with principal place of business in New Jersey. The defendants admitted these allegations in their answer. (R.11, Ans. ¶¶ 5-6, 8.) The plaintiffs alleged that "[s]ubject matter jurisdiction exists by virtue of 28 U.S.C. § 1332, diversity jurisdiction, in that this is an action between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000." (R.1, Compl. ¶ 14.)

The defendants responded in May 2008 with an answer, affirmative defenses, and state-law counterclaims against the plaintiffs. (R. 11.) The defendants also asserted that federal jurisdiction over their counterclaims was proper based upon diversity jurisdiction. (R. 11, Counterclaim ¶ 10.) The parties consented to the jurisdiction of Magistrate Judge Keys, *see* 28 U.S.C. 636(c), and began the discovery process.

2

In December 2008 Tola moved to New Jersey. Five months later, BI3 qualified to do business in New Jersey. Shortly thereafter, in May 2009, the plaintiffs filed an amended complaint explicitly incorporating by reference every allegation and claim asserted in the original complaint, (R. 51, Am. Compl. ¶¶ 207, 223, 238), asserting additional state law claims, and also asserting one federal claim under the Stored Wire and Electronics Act, 18 U.S.C. § 2701.[1] The amended complaint did not mention the plaintiffs' change of citizenship nor did it assert new jurisdictional allegations. The defendants, however, learned of the plaintiffs' change of citizenship a month later in June 2009 during their deposition of Tola. The defendants did not challenge the court's subject-matter jurisdiction at that time.

In May 2010 this case was reassigned to this court. (R. 107.) Since then, this court has resolved Defendants' Motion to Dismiss Counts IV-IX, dismissing counts four through eight of the amended complaint. (R. 137-39.) On the parties' cross-motions for summary judgment, this court ruled that the defendants were entitled to summary judgment in their favor on counts three and nine of the amended complaint and that the plaintiffs were entitled to summary judgment in their favor on counts two through seven of the counterclaims. (R. 140.) After the final pretrial conference, and just four days before trial was scheduled

---

[1] In July 2009, Magistrate Judge Keys granted the defendants' motion to dismiss this federal claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. at 60, 61.) The plaintiffs have not raised, and this court has not considered, whether the court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state claims.

to begin, the defendants moved to dismiss the plaintiffs' amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction.

## Facts

The facts relevant to the current motion are those relating to the citizenship of the parties and the filing of pleadings, discussed above, and facts relating to the nature of the relationship between Tola and Hamor. In considering a motion to dismiss for lack of subject matter jurisdiction, the court "must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *St. John's United Church of Christ v. City of Chicago,* 502 F.3d 616, 625 (7th Cir. 2007) (citations omitted).

Kenneth Tola is the president and sole shareholder of BI3. (R. 1, Compl. ¶ 4.) Alan Hamor is the Chairman and CEO of WK Networks and CampaignLocal and maintains control over the affairs of both corporations. (R. 11, Ans. ¶¶ 7, 9.) In 2006 the plaintiffs began providing consulting services to WK Networks on a project known as AutomoAds. (R. 1, Compl. ¶¶ 21, 24, 36.) BI3 provided the consulting services pursuant to a written Consulting Agreement that Tola executed on behalf of BI3 and that Hamor executed on behalf of WK Networks. (*Id*. at ¶¶ 40, 41.) The Consulting Agreement states that BI3 would be compensated for work performed for WK Networks. (*Id*. at ¶ 45.) In November 2006 Hamor requested that Tola cease work on the AutomoAds project. (*Id*. at ¶ 49.) Later, Hamor represented that WK Networks had decided to build a new Search Engine Marketing management platform to be called CampaignLocal and that WK Networks would own

4

CampaignLocal. (*Id*. at ¶¶ 50, 51.) BI3 began work on the CampaignLocal efforts with the understanding that it would be compensated pursuant to the terms in the Consulting Agreement. (*Id*. at ¶ 53.) BI3 received sporadic payments for its work under the Consulting Agreement but was owed $39,125 by the end of December 2006. (*Id*. at ¶¶ 55, 58.) Because of this outstanding balance and non-payment, Tola advised Hamor that BI3 would cease all work for WK Networks. (*Id*. at ¶ 59.)

Hamor and Tola modified their contract the following month in January 2007 so that BI3 would continue working for WK Networks. (*Id*. at ¶¶ 60, 63-4.) Specifically, they agreed that WK Networks would pay BI3 the fees past due as well as an annual fee of $250,000 for 2007 and that Hamor would grant Tola a 20% interest in CampaignLocal. (*Id*. at ¶ 64.) BI3 continued working on the CampaignLocal projects during the first quarter of 2007 based on this agreement. (*Id*. at ¶ 71.) In April 2007 WK Networks made a partial payment to BI3 and provided Tola a "'CAP Chart' ostensibly showing a 17.1% ownership interest in CampaignLocal for Tola." (*Id*. at ¶ 73.) Hamor then failed to make a payment to BI3 in May 2007 claiming that WK Networks did not have funds available (*id*. at ¶ 83), but BI3 continued to work on projects for WK Networks anyway and completed its work for WK Networks in August 2007, (*id*. at ¶ 89.)

Tola and BI3 initiated this lawsuit against Hamor, WK Networks, and CampaignLocal in April 2008. The complaint alleged that WK Networks owed BI3 $271,125 for work performed pursuant to the Consulting Agreement and January 2007 contract modification.

(*Id*. at ¶ 94).    The complaint asserted numerous claims against WK Networks and CampaignLocal for failure to pay BI3 for its services, including claims for breach of contract and quantum meruit (*id*. at ¶¶ 103-11; Count I) and unjust enrichment (*id*. at ¶¶ 112-119; Count II).

The complaint also alleged that in February 2007 Tola and non-party Earl Grant-Lawrence developed an idea for website tracking technology that they called "Data Trender." (*Id*. ¶ 133.)  Hamor represented to Tola and Grant-Lawrence that he could arrange for a sale or license of the Data Trender invention.  (*Id*. ¶ 140.)  Hamor convinced them to sign a document entitled "Assignment" so that CampaignLocal could file a Provisional Patent Application for the invention; Hamor assured them that the document did not actually relinquish their rights as inventors to Data Trender.  (*Id*. ¶¶ 148, 151, 156.)   Hamor then inserted his name on the Provisional Patent Application as the primary inventor, unbeknownst to Tola and Grant-Lawrence.  (*Id*. ¶ 162.)  Hamor may have caused the Provisional Patent Application to expire in April 2008.  (*Id*. ¶ 170.) The complaint asserts numerous claims arising from these facts, including fraud (*id*. ¶¶ 132-174; Count IV), rescission (*id*. ¶¶ 175,176; Count V), failure of consideration (*id*. ¶¶ 177-181; Count VI), breach of duty (*id*. ¶¶ 182-186; Count VII), and conversion (*id*. ¶¶ 187-192; Count VIII). The complaint also alleged, in the alternative to the rescission claim, that if Data Trender is an asset of CampaignLocal, then Hamor breached his fiduciary duty to CampaignLocal by wasting its assets by failing to preserve the provisional patent for Data Trender (*id*. ¶¶ 193-

200; Count IX) and that CampaignLocal was unjustly enriched because it failed to pay for

the Data Trender prototype (*id*. ¶¶ 201-206; Count X). The allegations in the amended

complaint further outlined the deterioration of the business relationship between Tola and

Hamor. Namely, Count XI claims that Hamor redirected business opportunities belonging

to CampaignLocal, the entity partially owned by Tola, to Adworthy, Inc., another company

owned by Hamor or WK Networks. (R. 51, Am. Compl. ¶¶ 207-222.) Count XII claims that

Hamor disregarded corporate formalities and pilfered the funds of CampaignLocal and WK

Networks for his own benefit, such that Hamor should be held personally liable to Tola and

BI3 for WK Networks' and CampaignLocal's debts. (*Id*. ¶¶ 223-237.) Finally, Count XIII

claims that Hamor intentionally, and without appropriate authorization, accessed electronic

communications addressed to and intended for Tola. (*Id*. ¶¶ 238-242.)

## Analysis

"[F]ederal courts are courts of limited jurisdiction," *Wellness Community-National

v. Wellness House*, 70 F.3d 46, 50 (7th Cir. 1995), and are obligated to determine whether

subject matter jurisdiction exists at any point in the proceedings, *Hukic v. Aurora Loan Serv.,*

588 F.3d 420, 427 (7th Cir. 2009). Thus, even though the defendants could have brought this

motion over two years ago and have neglected to offer any explanation for their considerable

delay, this court is obligated to resolve any doubts regarding its jurisdiction.

The diversity subject matter jurisdiction provided by 28 U.S.C. § 1332(a)(1) confers

jurisdiction over civil actions between citizens of different states where the matter in

controversy exceeds $75,000.   The Supreme Court has interpreted this grant of jurisdiction

to require complete diversity between the parties, *see Carden v. Arkona Assocs.,* 494 U.S.

185, 187 (1990), "meaning that no plaintiff may be from the same state as any defendant,"

*Smart v. Local 702 Intern. Broth. of Elec. Workers,* 562 F.3d 798, 803 (7th Cir. 2009).

The defendants concede that the parties were completely diverse when the plaintiffs

commenced this action in April 2008.   At that time, Tola was a resident and citizen of

Illinois.  BI3 was also a citizen of Illinois for purposes of diversity jurisdiction, as it was an

Illinois corporation with its principal place of business in Illinois.   *See* 28 U.S.C.

§ 1332(c)(1) ("a corporation shall be deemed to be a citizen of any State by which it has been

incorporated and of the State where it has its principal place of business.").   The defendants'

citizenship was completely diverse:  Hamor was a resident and citizen of New Jersey, and

WK Networks and CampaignLocal were both citizens of Delaware and New Jersey for

purposes of diversity jurisdiction because they were both Delaware corporations with

principal place of business in New Jersey.   Because the plaintiffs were citizens of a state

different from the states of the defendants' citizenship, and because the amount in

controversy exceeded $75,000,[2] the court had diversity jurisdiction over this case when the

original complaint was filed.

The defendants contend that the court's jurisdiction over the original complaint

notwithstanding,  jurisdiction over the amended complaint is lacking because the parties'

---

[2]  The defendants did not contest this allegation.  (R.11, Answer ¶14).

8

citizenship was not completely diverse when the amended complaint was filed in May 2009. Indeed, Tola had moved to the defendants' state of New Jersey and qualified BI3 to do business in that state about five months before filing the amended complaint. The defendants argue that the plaintiffs cannot establish that they properly invoked the court's subject matter jurisdiction because complete diversity of citizenship did not exist when they filed the amended complaint.

The defendants question two longstanding principles of diversity jurisdiction. The first, which is called the "time-of-filing rule" and "has a pedigree of almost two centuries," *see Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 581-2 (2004), is that "jurisdiction depending on the condition of the party is governed by that condition, as it was at the commencement of the suit," *id.* at 574 (citing *Conolly v. Taylor,* 27 U.S. 556, 565 (1829)). The second, which is a corollary of the first, is that "if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." *Freeport-McMoRan, Inc. v. K N Energy, Inc.,* 468 U.S. 426, 428 (1991) (citing *Mullan v. Torrance*, 22 U.S. 537 (1824)). Courts have consistently cited this rule to find federal jurisdiction in cases where a party changes citizenship after filing the complaint, destroying complete diversity. *See Freeport*, 468 U.S. at 428 ("Jurisdiction once acquired . . . is not divested by a subsequent change in the citizenship of the parties.").

These principles are grounded in the policy goals of "minimiz[ing] expense and delay," *see Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 807 (7th Cir. 2010),

9

and "minimizing litigation over jurisdiction," *Grupo,* 541 U.S. at 581. As the Supreme

Court explained in *Grupo,* "the time-of-filing rule is what it is precisely because the facts

determining jurisdiction are subject to change, and because constant litigation in response

to that change would be wasteful." *Id.* at 580. A contrary rule, which would allow a court

to be divested of diversity jurisdiction due to ordinary business transactions during the course

of litigation, "is not in any way required to accomplish the purposes of diversity jurisdiction."

*Freeport,* 498 U.S. at 428-29. Noting the complications that would follow a more mercurial

approach to subject matter jurisdiction, the Seventh Circuit has commented that "litigation

is not ping-pong" and should not be "shunted between court systems." *Cunningham*, 592

F.3d at 807.

The defendants argue that the time-of-filing rule does not salvage diversity jurisdiction

for the plaintiffs' amended complaint because, here, complete diversity disappeared

before they filed the amended complaint. The defendants' novel construction of the time-of-

filing rule would require a court to reassess diversity jurisdiction every time an amended

complaint is filed in a diversity suit.

Neither the Supreme Court nor the Seventh Circuit, or any of the circuit courts, for

that matter, have addressed this issue directly. However, in *Freeport-McMoRan, Inc. v. K*

*N Energy, Inc.,* 498 U.S. 426 (1991) (per curiam), the Supreme Court implicitly endorsed the

view that the parties' citizenship at the time of filing the original complaint controls for

purposes of assessing diversity jurisdiction, despite subsequent amendments to that

complaint. In *Freeport*, plaintiffs McMoRan Oil and Gas Company and Freeport-McMoRan, both Delaware corporations with their principal places of business in Louisiana, brought a state law breach of contract claim in federal court against K N Energy, Inc., a Kansas corporation with its principal place of business in Colorado. After the suit was filed, and for business reasons unrelated to the litigation, McRoRan transferred its interest in the contract to FMP Operating Company ("FMP"), a company with limited partners in multiple states including Kansas and Colorado. The plaintiffs added FMP as a party plaintiff and the case proceeded to a bench trial. After the court ruled in the plaintiffs' favor, the defendant appealed. The court of appeals found subject matter jurisdiction lacking because the addition of FMP destroyed complete diversity. The Supreme Court reversed. "We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events . . . . 'Jurisdiction once acquired . . . is not divested by a subsequent change in citizenship of the parties.'" *Id.* at 428 (citations and quotations omitted). The court then applied the time-of-filing rule to the original complaint, not the amended complaint. Noting that the parties were completely diverse when the original action was filed and that FMP was not indispensable to the litigation at that time, the court held that diversity jurisdiction survived the addition of a nondiverse party via an amended complaint. *Id.* at 428.

The Supreme Court reaffirmed its commitment to the time-of-filing rule in *Grupo*, a case that questioned whether a court may reassess the parties' citizenship sometime after the

plaintiff files the initial complaint. In that case, Atlas, a limited partnership created under Texas law, brought state-law claims in federal court pursuant to diversity jurisdiction against Grupo Dataflux, a Mexican corporation. For purposes of diversity jurisdiction, Atlas was a citizen of each state and foreign country of which its partners were citizens, *see Carden v. Arkoma Associates,* 494 U.S. 185 (1990), and it was thus a citizen of Mexico, Delaware, and Texas. Before trial, however, the Mexican partners left Atlas. As a result, the parties were completely diverse when the jury rendered its verdict. Atlas prevailed at trial. Grupo then moved to dismiss for lack of subject matter jurisdiction because the parties were not completely diverse when the plaintiffs filed suit. Atlas conceded the lack of complete diversity at the time of filing but argued that the court had diversity jurisdiction over the case because of the plaintiffs' post-filing change in citizenship. The court rejected this theory stating that the time-of-filing rule "measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing—whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal." *Grupo*, 541 U.S. at 571. The court declined to "manufacture a brand-new exception to the time-of-filing rule," *id*. at 574, which would have "impair[ed] the certainty of our jurisdictional rules," *id.* at 582, and resulted in "undesirable . . . collateral litigation." *Id.* In other words, the Supreme Court confirmed its allegiance to the time-of-filing rule, a rule that the dissenting justices—who would have adopted Atlas's proffered exception to the rule—described as a mechanism long-applied to maintain subject-matter

jurisdiction regardless of "post-filing changes that would otherwise destroy diversity jurisdiction." *Id.* at 584 (Ginsburg, J., dissenting).

The few courts that have addressed the defendants' argument that diversity jurisdiction, once properly invoked does not confer jurisdiction over amended complaints, have rejected it. For example, in *Smith v. Potomac Edison Co.,* 165 F.Supp. 681 (D. Md. 1958), a citizen of Pennsylvania sued a Maryland corporation and invoked the court's diversity jurisdiction. Later, after the plaintiff became a citizen of Maryland, she moved to amend her complaint. Potomac challenged the court's subject matter jurisdiction over the amended complaint on the ground that the parties were not completely diverse when the plaintiff filed it. The court quickly disposed of this issue and granted the motion to amend the complaint, stating only that the plaintiff "was a resident of Pennsylvania at the time the original complaint was filed. That is the controlling date." *Id.* at 686 (citing *Koenigsberger v. Richmond Silver Mining Co.*, 158 U.S. 41, 49 (1895)).

Similarly, in *Oh v. Ford Motor Co.*, 79 F. Supp.2d 1375 (N.D. Ga. 1999), the court dismissed Ford's argument that it should re-assess diversity of citizenship at the time an amended complaint is filed. In that case, the plaintiffs, citizens of Georgia, sued Eun Cho, also a Georgia citizen, in state court. By the time the plaintiffs filed an amended complaint to add Ford as a party, Cho had moved to California. Ford removed the case to federal court and invoked the court's diversity jurisdiction on the ground that the parties were completely diverse at the time the plaintiffs filed the amended complaint to add Ford as a party. The

court discussed the long-established time-of-filing rule and the certainty that it provides before concluding that diversity jurisdiction depends on the parties' citizenship at the time the original complaint, not the amended complaint, was filed. *Oh*, 79 F. Supp.2d at 1377. The court noted that "Ford has cited no authority for its argument that, in this case, diversity should be determined . . . by the filing of the Amended Complaint." *Id*.

The Second Circuit in *LeBlanc v. Cleveland*, 248 F.3d 95 (2nd Cir. 2001), addressed a question similar to that posed by the defendants in their motion to dismiss and also ruled that the time-of-filing rule requires a court to assess citizenship from the time of filing the original complaint. In that case, the plaintiff sought to amend her complaint to allege diversity jurisdiction and argued that the court should assess her citizenship from the time she filed the original complaint, when she was diverse from the defendant, rather than from the time she filed the amended complaint, when diversity had disappeared. The court concluded that amendments to allege diversity jurisdiction relate back under Federal Rule of Civil Procedure 15 and therefore assessed her citizenship from the time she filed the original complaint. *Id.* at 99-100.

*LeBlanc* is instructive here because the claims asserted in the plaintiffs' amended complaint relate back to the original complaint. Rule 15(c) states that an amendment to a pleading "relates back" to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c). Here, the original

14

complaint attempted to set out the causes of action arising from the parties' business relationship and the management of CampaignLocal's assets. Principally, the plaintiffs claimed that Hamor, WK Networks, and CampaignLocal failed to pay Tola and BI3 for services provided. Secondly, the plaintiffs claimed that Hamor committed fraud by usurping Tola's rights to Data Trender, and in the alternative, that if CampaignLocal owned Data Trender, that Hamor wasted that asset by failing to perfect the patent application for Data Trender. The claims in the amended complaint substantially converge with those asserted in the original complaint. The amended complaint alleges that Hamor prevented WK Networks and CampaignLocal from paying their debts to plaintiffs by purposefully undercapitalizing those companies. It also alleges further waste of CampaignLocal's assets, in the form of business opportunities diverted to another entity owned by Hamor. Amendments to pierce the corporate veil to reach a stockholder relate back under Rule 15(c) when the stockholder was already a defendant to other counts of the complaint, as Hamor was here. *See Johnson v. Helicopter & Airline Serv. Corp.*, 389 F.Supp.509, 513-514 (D.C. Md.1974); *see also Parsley v. Kunja Knitting Mills, USA, Inc.,* No. 4:91:0966-15, 1991 WL 340565, at *1-3 (D.S.C. July 29, 1991).

The defendants argue that the claims in the amended complaint do not relate back because the original complaint did not "provide notice" of the claims. Though Rule 15(c)(1)(C) precludes relation back if the party did not receive "notice" of the action, that section applies only to amendments that change the party or the naming of the party. *See*

15

Fed. R. Civ. P. 15(c)(1)(C). In this case, the amended complaint did not add any parties of change the name of any party, thus the notice requirement does not apply. Because the amended complaint relates back to the original complaint, *LeBlanc* suggests that this court should assess the plaintiffs' citizenship from the time they filed the original complaint.

The defendants do not question that the time-of-filing rule secures this court's jurisdiction over the original complaint. They argue, however, that this court should assess the amended complaint as if it initiated a separate lawsuit and therefore triggered a new "time of filing" for purposes of the rule. Of the cases the defendants rely on in support of their position, they have not cited any like this one, where the amended pleading incorporates by reference every factual allegation and legal claim asserted in the original complaint. Rather, they cite cases arising under federal question jurisdiction and one diversity case where the plaintiff amended the complaint after removal to add a non-diverse party.

Defendants rely primarily on *Wellness Community-National v. Wellness House*, 70 F.3d 46 (7th Cir. 1995), a case involving federal and state law claims. After the federal claims were dismissed, the plaintiff filed an amended complaint alleging only state law claims and diversity jurisdiction. Rather than rule on the defendant's challenge to the court's diversity jurisdiction, the district court found that the amended complaint fell within the court's supplemental jurisdiction, *see* 28 U.S.C. § 1367, because the original pleading alleged federal claims and state claims arising out of the same facts.

16

When the defendants appealed the court's exercise of jurisdiction, the Seventh Circuit began its inquiry by "determin[ing] which complaint governs this suit." *Wellness*, 70 F.3d at 49. In doing so, it discussed only one factor: that the amended complaint dropped all the claims that gave rise to federal jurisdiction. *Id*. "In these circumstances," the court wrote, "the amended pleading supercedes the original pleading." *Id.* The court held that "once the First Amended Complaint superceded the original complaint, there was no federal claim to which these state claims could be 'supplemental.'" *Id.* at 50.

The defendants suggest that *Wellness* requires every amended complaint to stand on an independent basis of subject-matter jurisdiction. But *Wellness* does not reach so far. First, *Wellness* noted that "amendments that affect the court's subject matter jurisdiction are rare." *Id.* at 49. Second, the treatise that the *Wellness* court cited in support of its holding clarifies that some amended complaints—the amended complaints that incorporate portions of the original pleading—do not supercede the incorporated portions of the original complaints. "Once an amended pleading is interposed, the original pleading no longer performs any function in the case . . . . [T]he original pleading, once superseded, cannot be utilized to cure defects in the amended pleading, *unless the relevant portion is specifically incorporated in the new pleading*." *Id.* at 49 (citing 6 C. Wright, A. Miller & Mary Kay Kane, Federal Practice and Procedure § 1476 at 556-57, 559 (1990) (emphasis added)).

Courts have long noted that while amended pleadings ordinarily supercede original pleadings, allegations that are specifically incorporated by reference in the amended pleading

17

are not superceded. *See 188 LLC v. Trinity Indus., Inc.,* 300 F.3d 730, 736 (7th Cir. 2002) ("An amended pleading ordinarily supersedes the prior pleading. The prior pleading is in effect withdrawn as to all matters not restated in the amended pleading") (quoting *Nisbet v. Van Tyl*, 224 F.2d 66, 71 (7th Cir. 1955)); *see also King v. Dogan*, 31 F. 3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.") (quoting *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985). This exception to the general rule is envisioned by Federal Rule of Civil Procedure 10(c), which specifically allows for incorporation by reference in subsequent pleadings: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."

Unlike the amended complaint in *Wellness*, the amended complaint in this case specifically incorporates by reference each of the 10 counts alleged in the original complaint as well as every factual allegation stated in support of the claims. As such, every claim pled in the original complaint remained in play after the amended complaint was filed. In fact, the parties were scheduled to try counts I, II, and X, all alleged in the original complaint, when the defendants filed the instant motion to dismiss. The amended complaint in this case supplemented the original pleading by adding three new claims, but it did not completely supplant the original pleading, in contrast to *Wellness*.

The defendants also cite *Rockwell International Corp. v. United States*, 549 U.S. 457 (2007), in support of their argument that every amended complaint filed in a diversity action must meet the jurisdictional requirements of 28 U.S.C. § 1332(a). The question presented in *Rockwell,* a case arising under the False Claims Act, 31 U.S.C. § 3729, *et. seq*, was whether the plaintiff—a *qui tam* relator—was an "original source" of allegations for purposes of the Act's jurisdictional bar. The bar withdraws federal jurisdiction for cases arising under the Act that are based on publicly disclosed allegations "unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A). The plaintiff-relator, a former Rockwell engineer, alleged that Rockwell had knowingly presented false claims to the government because it had failed to comply with certain environmental laws and regulations as was required by its government contract. The relator raised numerous environmental and safety issues including a design flaw in Rockwell's piping mechanism for its "pondcrete" system that the relator predicted would fail. After the government intervened in the suit, the government and the relator filed a joint amended complaint. The amended complaint did not allege the design flaw averred in the relator's original complaint. Instead, it alleged problems in Rockwell's pondcrete operations, process controls, and procedures—issues that were different from the issues initially raised by the relator. At trial, the relator and the government argued that Rockwell's pondcrete had failed for the reasons enumerated in the amended complaint. After the jury found Rockwell liable, Rockwell moved to dismiss for lack of jurisdiction on the

ground that the successful claims were based on publicly disclosed information for which the relator was not the original source.

The court analyzed the False Claims Act to determine which of the relator's allegations were relevant to the Act's jurisdictional bar—the allegations in the relator's original complaint or the allegations in the amended complaint. The *Rockwell* court decided that "allegations in the complaint *as amended*" controlled because any other interpretation of the Act would allow a relator to circumvent the jurisdictional bar by "plead[ing] a trivial theory of fraud for which he had some direct and independent knowledge and later amend[ing] the complaint to include theories" for which he had no original knowledge. *Rockwell*, 549 U.S. at 473 (emphasis in original).   The court reiterated that subject matter jurisdiction "depends on the state of things at the time of the action brought," citing *Mullan v. Torrance,* 22 U.S. 537 (1824)*,* the seminal case establishing the time-of-filing rule for diversity cases. *Rockwell*, 549 U.S. at 473.   It clarified that withdrawal of allegations giving rise to jurisdiction—in *Rockwell*, the allegations that the relator could claim "original source" status—would defeat jurisdiction unless "replaced by others that establish jurisdiction." *Id*. at 473.

*Rockwell*, then, like *Wellness*, stands for the proposition that when a plaintiff's amended complaint withdraws the claims that gave rise to federal jurisdiction, the court must assess whether the amended complaint properly invokes the court's jurisdiction.   The defendants argue that *Wellness* and *Rockwell* govern here because the plaintiffs should have

withdrawn their jurisdictional allegations when they filed their amended complaint. True, the plaintiffs should have supplemented the jurisdictional allegations in the amended complaint to clarify that the plaintiffs had changed citizenship since filing the original complaint. But the plaintiffs would not have had to completely withdraw the original citizenship allegations because they remained true. It is uncontested that the plaintiffs were citizens of Illinois when they filed the original complaint. The defendants' reliance on *Wellness* and *Rockwell* suggests that the defendants have confused amended allegations that could *never* give rise to subject-matter jurisdiction— such as where the amended complaint could not arise under supplementary jurisdiction while raising only state law claims, or where the relator could not claim "original source" status for the amended allegations—with statements in the amended pleading that correctly conferred jurisdiction on the court. Here, even if the plaintiffs had amended their complaint to note their changed citizenship, as they should have, the complaint would still have asserted that the parties were completely diverse at the time-of-filing, the relevant time for assessing the court's diversity jurisdiction over the action. *See Oh,* 79 F.Supp.2d at 1377.

Lastly, the defendants rely on *Perez v. Arcobaleno Pasta Machines, Inc.,* 261 F.Supp.2d 997 (N.D. Ill. 2003), in support of their claim that the court must consider the facts that existed when the plaintiffs filed the amended complaint in determining subject-matter jurisdiction. In *Perez*, the plaintiff, a citizen of Illinois, sued Arcobaleno Pasta Machines, a foreign corporation, in state court. Arcobaleno removed the case to federal court and filed

a third-party complaint against Perfect Pasta, Inc., an Illinois corporation. Plaintiff then amended her complaint to add Pasta and Bison Leasing, a New York corporation. On plaintiff's motion to remand, the court looked only to the amended complaint to assess jurisdiction, but specified that "Section 1447(e) governs the disposition of this case" because it "involves the addition of a party after removal." *Perez*, 261 F.2d at 999-1000. Thus, *Perez* is distinguishable from the present case, which involves neither the addition of a party nor removal.

This court declines to adopt the defendant's proposed exception to the time-of-filing rule in this case, where the original complaint incorporated every allegation and cause of action asserted in the original complaint. The defendants have not cited any cases where the court adopted their construction of the time-of-filing rule, that is, that diversity jurisdiction, though properly invoked at the outset, is not maintained for amended complaints where there is no withdrawal of claims or change in parties. Their proposed exception to the time-of-filing rule would have impractical consequences. For example, if a party could not file an amended complaint after changing citizenship for reasons unrelated to the litigation, the parties could be forced to simultaneously litigate parallel claims arising from the same set of facts or transactions in state court. This redundancy would waste judicial resources and could also pose problems relating to preclusion.

The defendants advance one final attack on this court's diversity jurisdiction. Defendants argue that CampaignLocal, a citizen of Delaware and New Jersey, is the real

party in interest as to Count XI, a shareholder derivative claim, and should therefore be realigned as the party-plaintiff for that count. The defendants cite *Nejmanowski v. Nejmanowski*, 841 F.Supp.864 (C.D. Ill.1994), for the proposition that the corporation should be realigned as the party-plaintiff since it is the real party in interest and stands to benefit from a successful derivative suit. The defendants acknowledge that *Smith v. Sperling*, 354 U.S. 91 (1957), established that when a corporation's management is antagonistic to the plaintiff shareholder, the corporation should be aligned as a party defendant. They argue, however, that Tola cannot establish the requisite antagonism in this case.

*Sperling* states that courts should "determine the issue of antagonism on the face of the pleadings and by the nature of the controversy." *Id.* at 96. The pleadings in this case paint a picture of an acrimonious, embittered relationship between Tola, a minority shareholder of CampaignLocal, and Hamor, the Chairman and CEO of that company who admitted that he controls CampaignLocal's affairs. The complaint describes the deterioration of the business relationship between Tola and Hamor. It alleges that CampaignLocal failed to pay the plaintiffs for services rendered, that Hamor fraudulently induced Tola to assign his rights to his Data Trender invention to CampaignLocal, and that CampaignLocal failed to provide consideration for those rights. CampaignLocal has asserted counterclaims arising out of the same facts and transactions, suggesting that Hamor, who controls CampaignLocal, is antagonistic towards Tola and his claims. Moreover, the plaintiffs' allegations of fraud are indicative of antagonism that exists between the parties. *See Miller v. Up In Smoke, Inc.*,

23

738 F.Supp.2d 878, 882 (N.D. Ind. 2010) ("Antagonism may be drawn from allegations of fraud, breach of trust, or illegality."). Here, "it is plain that the stockholder and those who manage the corporation are completely and irrevocably opposed on a matter of corporate practice and policy," *see Sperling*, 354 U.S. at 97. Thus, CampaignLocal is properly aligned as a party defendant in this case because "there is real collision between the stockholder and his corporation." *Id*. at 97-8. This court therefore has diversity jurisdiction over count XI.

## Conclusion

For the foregoing reasons, the defendants' Motion to Dismiss Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) is denied.[3]

**ENTER:**

Young B. Kim
**United States Magistrate Judge**

---

[3] Because the court has subject-matter jurisdiction over the amended complaint pursuant to 28 U.S.C. § 1332, there is no need to address the argument raised in the plaintiffs' supplemental brief that this court has supplemental jurisdiction over the amended complaint pursuant to 28 U.S.C. § 1367(a).